STATE, Respondent, v. JOHNSON, Appellant.[†]

*No. 75-204-CR.  Submitted on briefs September 14, 1976.—*
*Decided October 5, 1976.*
(Also reported in 245 N. W. 2d 687.)

[†] Motion for rehearing denied, without costs, on November 30, 1976.

28

For the appellant the cause was submitted on the brief of *Hughes and Matheson Law Office* of Oshkosh.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general.

CONNOR T. HANSEN, J.   Johnson was the incorporator of Midwestern Pacific Corporation, with offices in Appleton, Wisconsin. He served as president and director of the company from July of 1970, through September of 1972. He was charged with eleven counts of willfully failing to deposit with the State, certain withholding taxes as required by sec. 71.20 (4), Stats., and contrary to sec. 71.11 (41), Stats. The charges were in relation to quarters ending September 30, 1970; December 31, 1970; March 31, 1971; June 30, 1971; September 30, 1971; December 31, 1971; and the months ending April 30, 1972; June 30, 1972; July 31, 1972; August 31, 1972, and September 30, 1972. On motion of the State, count 11 was dismissed and the jury returned a verdict of not guilty as to count six.

Midwestern was engaged in the business of subcontracting right-of-way clearance work. The corporation operated mainly in the State of Wisconsin, with occasional jobs out of state, and "altogether" had ap-

proximately 40–45 employees. The corporation was financed through an arrangement with the First National Bank of Menasha and a guarantee of George Banta of the George Banta Company. After an initial $30,000 loan was repaid to the First National, the largely verbal financing arrangement was as follows: First National opened both a checking and a general account for Midwestern, and proceeded to loan varying amounts to Midwestern to complete projects. Midwestern signed some notes, but generally accomplished repayment by assigning its accounts receivable to First National. In addition, George Banta both co-signed notes and extended a letter of credit to First National, guaranteeing loans to Midwestern up to $250,000. By virtue of an agreement between the First National and Midwestern, no disbursements were to be made from either of the two accounts until R. J. Roesler of First National had been supplied with a list of the number of the check, the payee, the amount, and the purpose, and had approved such disbursement. Testimony was in conflict as to the actual amount of control over funds possessed by Johnson, First National and George Banta, and thus, the responsibility of Johnson for failure to make the required withholding tax deposits was in issue.

The parties stipulated that the amounts alleged in the complaint were withheld from the employees during the periods alleged and that such sums were not deposited with the State of Wisconsin. The defendant did not stipulate that the failure to deposit such sums was a willful act on his part; therefore, at trial, the principal issue became the willfullness of Johnson in failing to deposit the sums required.

Further facts will be discussed in considering the issues presented, which are:

1. After a witness for the State testifies to certain conversations with the defendant, on cross-examination,

are other conversations between the defendant and the witness, which are favorable to the defendant, excludable as hearsay?

2. Were exhibits relating to other corporations with which the defendant had been associated in the past relevant and, therefore, admissible?

3. Did the trial court abuse its discretion in sentencing the defendant?

## *EXCLUSION OF TESTIMONY AS HEARSAY.*

The prosecution called accountant, John Myron, as a witness. On direct examination, Myron testified extensively concerning accounting work which he had done for Johnson and Midwestern in 1971 and 1972. He stated that late in October, 1971, John Weber (of the Wisconsin Department of Revenue) assisted Johnson in filling out and filing new WT–6 forms (forms which reflected the total amount of income tax withheld from employees and due to the state) because the original WT–6 forms filled out by Myron had never been filed. In response to the question, "Did Mr. Johnson pay any amount at that time?" Myron answered, "Well, I know he didn't because later on he told me he hadn't." Defense counsel did not object to Myron's testimony.

On cross-examination, defense counsel asked Myron if he specifically remembered any conversations with Mr. Johnson about his financial condition. The prosecution objected that to the extent that Myron's answers would involve statements of the defendant, they would be hearsay. The trial court sustained the objection. Defense counsel acknowledged that the statements, if made by the defendant, would be self-serving and stated in his offer of proof:

". . . Well, Your Honor, we would show that this man —that the statements were that he did instruct Mr.

Johnson to pay these taxes and that Mr. Johnson indicated that he did not and we can ask the question of the witness and that he did not and that he was very concerned about it and it shows that he did not. But he indicated and expressed he did not control the funds. And he could not pay them and he was very disturbed about it."

The trial court subsequently ruled that there would be no valid objection if Myron testified that based on his observations of the defendant during discussions of the question of the tax liability, and in his opinion, the defendant was concerned about making payments; but that Myron could not testify as to what was said by the defendant in that such statements that were self-serving would be inadmissible.

Defendant contends that after a witness is called by the prosecution and testifies as to conversations with the defendant, the full substance of those conversations, as well as the substance of other conversations, elicited on cross-examination, between defendant and the witness which are favorable to defendant are not excludable as hearsay.

The defendant argues that this court in *Boller v. Cofrances* (1969), 42 Wis.2d 170, 166 N.W.2d 129, buried forever the "beyond the scope of direct examination" objection to cross-examination and adopted the "wide-open" rule of cross-examination; and further that such rule is now expressed in sec. 906.11 (2), Stats. The extent of the holding in *Boller* and the nature of the objection of the prosecution to the testimony which was attempted to be elicited from Myron on cross-examination is misconceived.

The court in *Boller, supra,* removed the artificial and meaningless rule that only served to complicate and lengthen litigation by excluding *all* evidence simply because it was beyond the scope of direct examination. In an effort to insure the orderly presentation of evidence,

this court in *Boller* placed the matter of the scope of cross-examination squarely within the sound discretion of the trial court.

■ That did not mean, however, that once a given area was opened up on direct examination, all matters related thereto, directly or indirectly, were admissible on cross-examination. The court, in *Boller*, recognized some restrictions on evidence admissible in cross-examination, stating at page 181:

". . . If the question is relevant and is otherwise admissible and the information solicited is within the knowledge of the witness, it should be within the sound discretion of the trial judge to determine whether or not questions on cross-examination prevent an orderly and cogent presentation of the evidence. . . ."

Thus, under the rule of *Boller, supra,* the evidence sought to be elicited must still be "otherwise admissible." No matter how "wide-open" cross-examination may be, there cannot be admitted evidence which is otherwise not admissible.

That was exactly the nature of the prosecution's objection. The prosecution did not object to the scope of cross-examination; rather it objected to Myron's testimony as hearsay and the trial court sustained the objection on that ground. Thus, the prosecution's objection was that the evidence was not "otherwise admissible" in that it was hearsay.

■ Even if the evidence had been "otherwise admissible," it still could have been excluded in the discretion of the trial judge if its harmful effects on the legal process outweighed its probative value. *See Nimmer v. Purtell* (1975), 69 Wis.2d 21, 230 N.W.2d and *Neider v. Spoehr* (1969), 41 Wis.2d 610, 165 N.W.2d 171.

The question becomes whether the testimony of Myron, sought to be elicited on cross-examination was "otherwise admissible." Johnson makes two arguments: First that that testimony was not hearsay; and second, that since

Johnson's admissions against interest were admitted, then he should have a correlative right to introduce beneficial admissions on cross-examination.

The Wisconsin Rules of Evidence were adopted by this court on June 5, 1973, effective January 1, 1974, 59 Wis.2d Rp.

"Hearsay" is defined in sec. 908.01 (3), Stats., as ". . . a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Sec. 908.02 provides that "Hearsay is not admissible except as provided by these rules or by other rules adopted by the supreme court or by statute."

The testimony sought to be elicited by the defendant was clearly hearsay. As appears from the offer of proof, the questions at issue would have elicited testimony from Myron that Johnson had stated that he was concerned about his failure to pay the withholding taxes but that he did not control the funds from which such payment could be made. The testimony was hearsay and Johnson, neither here, nor at the trial, has argued any exception to the hearsay rule under which the testimony might be admitted.

Johnson argues that since admissions against interest were admitted, there should be a correlative right to introduce beneficial admissions on cross-examination. The Rules of Evidence do not allow for such symmetry in this case.

Both the prosecution and the defense misconceive the nature of evidence elicited from Myron on direct examination. The testimony of Myron that Johnson stated that he had not paid the withholding tax, did not constitute hearsay, nor could it be classified as an "admission against interest" as that term is used by the parties. It was specifically excluded from the definition of hearsay under the provisions of sec. 908.01 (4) (b) 1, Stats., which states:

*"(4)* STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:

"(a) . . . .

"(b) *Admission by party opponent.* The statement is offered against a party and is:

"1. His own statement, in either his individual or a representative capacity, . . ."

██ The testimony of Myron on direct examination constituted evidence of an "admission" of the defendant, a party to this action, which was offered against the defendant, and it was admissible on this basis, not on the basis of any exception to the hearsay rule.[1]

It appears that both the prosecution and the defense have confused "admission[s]" which are *excluded* from the definition of hearsay under sec. 908.01 (4) (b) 1, Stats., with "STATEMENTS AGAINST INTEREST" which are hearsay, but which are *exceptions* to the hearsay rule, under the provisions of sec. 908.045 (4).

In Wisconsin Rules of Evidence, *supra,* R241, in the judicial council committee's notes, the observations by McCormick, sec. 240,[sic][2] point out the problems of confusing the two:

" 'A type of evidence with which admissions may be confused is evidence of Declarations against Interest. Such declarations, coming in under a separate exception to the hearsay rule, to be admissible must have been against the declarant's interest when made. No such requirement applies to admissions. . . . Of course, most admissions are actually against interest when made, but there is no such requirement. Hence the common phrase in judicial opinions, "admissions against interest" is an invitation to confuse two separate exceptions to the hearsay rule. Other apparent distinctions are that admissions must be statements of a party to a lawsuit (or his prede-

[1] Prior to the adoption of the new Rules of Evidence, Wisconsin had considered admissions to be hearsay exceptions. *See Smith v. Rural Mut. Ins. Co.* (1963), 20 Wis. 2d 592, 123 N.W.2d 496; and *Marek v. Knab Co.* (1960), 10 Wis.2d 390, 103 N.W.2d 31.

[2] McCormick, *Laws of Evidence* (1954), pp. 504, 505, sec. 239.

cessor or representative) and must be offered, not for, but against him, whereas the Declaration against Interest need not be and usually is not made by a party or his predecessor or representative, but by some third person. Finally the Declaration against Interest exception admits the declaration only when the declarant, by death or otherwise, has become unavailable as a witness, whereas obviously no such requirement is applied to admissions of a party.' "

In the same commentary at page R240, a rational basis for excluding such admissions from the definition of hearsay was set forth:

". . . The reasons for the hearsay rule are not applicable. There is no need for a party to cross-examine himself nor should he be heard to require that his own statements be under oath. . . ."

The defendant's argument can have no merit when the Rules of Evidence state that one form of evidence, *i.e.*, admissions offered against a party, under sec. 908.01 (4) (b) 1, Stats., shall not be hearsay, and another, *i.e.*, self-serving statements of a declarant offered through another witness to prove the truth of the matter asserted, shall be hearsay.

■ The testimony sought to be elicited from the witness-Myron on cross-examination concerning self-serving statements made by the defendant was clearly hearsay and was properly excluded by the trial court.

■ Even if the trial court had committed error in excluding such testimony, it would not have been prejudicial. Johnson sought to elicit testimony that he was concerned about his failure to pay the withholding taxes and that he did not control the funds from which such payment could be made. Such testimony was subsequently given on the direct examination of Johnson himself, as well as on further cross-examination of Myron, and thus was properly before the jury.

## ADMISSION OF EXHIBITS.

The prosecution offered and the trial court admitted into evidence, over the objection of Johnson, eight exhibits which related to three corporations with which he had been previously associated. The three corporations were Utility Clearing Service, Inc., National Right-of-Way Corporation, and International Oil & Gas Service, Inc.

With respect to Utility Clearing Service, Inc., those exhibits showed, among other things, the following: That Utility Clearing Service, Inc., was incorporated on March 16, 1954, by Johnson and another individual; that all of the annual reports of said corporation showed Johnson as the president and a member of the board of directors; that all of the annual reports subsequent to March 6, 1956, showed him as the treasurer, in addition to president; that on January 30, 1962, an Employer's Registration Statement for withholding tax was signed by Johnson as president of said corporation; and that between November, 1965, and June, 1967, a withholding tax deficiency of $7,344.55 accumulated on the records of the Wisconsin Department of Taxation.

The exhibits relating to National Right-of-Way Corporation showed, among other things, the following: That said corporation was incorporated under the name L/C Contractors, Inc., on June 8, 1966, by the Johnson as sole incorporator and sole initial director; that the officers of said corporation included him as the president and treasurer; that on December 15, 1966, he signed an Employer's Withholding Tax Registration Application with respect to said corporation; and that between April of 1967, and February of 1968, a withholding tax deficiency of $3,202.34 accumulated with respect to said corporation on the records of the Wisconsin Department of Taxation.

With respect to International Oil & Gas Service, Inc., those exhibits showed, among other things, the following: That the 1969 annual report of said corporation showed Johnson to be president and a member of the board of directors of said corporation; and that in June of 1971, an arrearage of $5,549.68 in withholding taxes accumulated with respect to said corporation on the records of the Wisconsin Department of Revenue.

The offer of proof of the prosecution indicates that the above exhibits were introduced in reliance on sec. 904.04 (2), Stats., for the purpose of establishing that the defendant willfully failed to make the deposits with respect to Midwestern Pacific Corporation. The prosecution stated:

". . . Now, I am faced here, Your Honor, with proving a very difficult element. Willfulness, of course, is a very nebulous element of an offense. It has got to be proved by circumstantial evidence. It seems to me that one of the things I have to show is that, in fact, Mr. Johnson didn't fail to file these returns because of mistake or accident or he just didn't know the procedure. . . And I think because of the element of willfulness is a element of this offense, and I think this material, the pattern of conduct that it displays and the knowledge that it indicates that he must have had with regard to his responsibilities bears on the element that I have to prove in this particular case. . . ."

Johnson contends that the evidence of his prior association with other corporations having records of delinquency in making the withholding tax payments was improperly admitted because it was never established that he was in fact the employer or person who had the legal responsibility and duty to file withholding returns and deposit withheld sums with the State.

Johnson misconstrues the purpose for which the evidence was admitted. It was not admitted to prove the character of any person in order to show that he acted

in conformity therewith. That would be directly contrary to the provisions of sec. 904.04 (2), Stats. Nor was it introduced as evidence of other "crimes" or "wrongs." The evidence was admitted solely because it was, in the opinion of the trial court, relevant to the issue of Johnson's willfulness in not paying the State. It was evidence of prior "acts" of the defendant, not necessarily wrongful and not necessarily criminal, which were relevant to the issue of willfulness.

Sec. 904.04 (2), Stats., specifically does not *exclude* such evidence. That section states:

"*(2)* OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Under section 904.04 (2), Stats., two criteria must be met before evidence of other acts will be admitted: First, it must be relevant (see sec. 904.02, Stats.); and second, even if relevant, its probative value must not be substantially outweighed by the dangers of unfair prejudice, confusion of the issues or misleading the jury or by consideration of undue delay, waste of time or needless presentation of cumulative evidence. (See sec. 904.03, Stats.)

Relevant evidence is defined in sec. 904.01, Stats., as ". . . evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See: Oseman v. State* (1966), 32 Wis.2d 523, 145 N.W.2d 766; *State v. Becker* (1971), 51 Wis.2d 659, 188 N.W.2d 449; and *Miller v. State* (1972), 53 Wis.2d 358, 192 N.W.2d 921.

In the instant case, the parties stipulated that the amounts alleged in the complaint were withheld from employees and were not deposited with the State. The crucial issue to be decided was whether or not the defendant's failure to deposit the funds with the State was the "willful" act of the defendant.

■ The exhibits were relevant evidence on the issue of "willfulness" on the part of Johnson. The exhibits reflect that he had held top executive positions in three corporations; that he had signed withholding tax registration forms for two of those corporations; and that all three corporations had failed to deposit withholding taxes during the periods required by law. They were offered to show that Johnson had knowledge of the requirement that an employer deposit withholding taxes collected from employees and to negate the possibility that the defendant's failure to deposit the withholding taxes at issue in the present case was the result of mistake or accident.

■ Their relevancy was not lessened by the fact that it was not determined that Johnson was the person legally charged with the responsibility of depositing withheld funds with the state. That fact may affect their probative value and lessen the weight to which they are entitled, but it has no effect on their relevancy. They remain relevant on the issue of willfulness.

■ Furthermore, the trial court weighed the probative value of the evidence against any chance of unfair or undue prejudice and determined that the probative value did outweigh substantially any chance of unfair or undue prejudice. Thus, the trial court properly exercised its discretion under the provisions of sec. 904.03, Stats., and the holding of *Whitty v. State* (1967), 34 Wis.2d 278, 149 N.W.2d 557. The trial court also instructed the jury as to the specific purposes for which the exhibits were admitted.

■ Defendant's argument that the acts described in those exhibits "Were Too Remote to Have Probative

Value Today," is not persuasive. The exhibits were relevant to show that the defendant had knowledge of the requirement to deposit withholding taxes and that his failure to do so here was probably not the result of mistake or accident. The time frame of the pertinent acts described in the exhibits ran from 1962 to 1971. Since the criminal acts in question in the present prosecution occurred in the period from 1970 to 1972, it cannot be said that the former were too remote to have probative value in the case before us.

The argument of Johnson that the exhibits should be excluded because they "constitute[d] a substantial surprise to the defense" must be dismissed. The remedy for surprise is not the categorical exclusion of evidence. *See Frederickson v. Louisville Ladder Co.* (1971), 52 Wis. 2d 776, 784, 191 N.W.2d 193. At trial, Johnson made no request for continuance of the trial at the time the exhibits were introduced. We also observe that defense counsel extensively cross-examined a witness as to the exhibits and directly examined Johnson as to their content. The issue of surprise cannot now be raised.

These exhibits offered by the state were properly admitted into evidence.

### SENTENCING.

The maximum punishment provided by statute for each of the nine counts is a fine of not more than $500 and imprisonment not to exceed six months, or both. The trial court imposed concurrent sentences of six months in the county jail with *Huber* privileges on the first five counts, withheld sentence on the remaining four counts, and placed the defendant on probation for two years.

Johnson contends that the trial court abused its discretion in sentencing him to six months in county jail with *Huber* privileges. He disagrees with the presentence report that recommended incarceration and further ar-

gues that the trial court ". . . placed undue emphasis on the unproven wrongful acts the defendant purportedly committed while employed by the three corporations referred to in the prosecution's case in chief."

This court has often expressed a strong policy against interference with the discretion of the trial court in passing sentence. *See: Voigt v. State* (1973), 61 Wis. 2d 17, 211 N.W.2d 445, and *State v. Tuttle* (1963), 21 Wis.2d 147, 124 N.W.2d 9. Only where there has been a clear abuse of discretion will this court modify a sentence. *Gaddis v. State* (1974), 63 Wis.2d 120, 216 N.W.2d 527. Such an abuse of discretion might be found under the following circumstances: (1) Failure to state on the record the relevant and material factors which influenced the court's decision; (2) reliance upon factors which are totally irrelevant or immaterial to the type of decision to be made; and (3) too much weight given to one factor in the face of other contravening considerations. *Ocanas v. State* (1975), 70 Wis.2d 179, 187, 233 N.W.2d 457. Even then, when this court reviews a sentence in the context of an abuse of discretion charge, it will start with " '. . . the presumption that the trial court acted reasonably and with the requirement that the complainant must show some unreasonable or unjustifiable basis in the record for the sentence complained of.' " *Voigt v. State, supra*, p. 23; *Jung v. State* (1966), 32 Wis.2d 541, 548, 145 N.W.2d 684.

There is absolutely no indication in the present case that the trial court placed any undue emphasis on any "unproven wrongful acts" of Johnson. In considering sentence, the trial court had before it for consideration: The arguments of defense counsel; the arguments of the prosecution; an extensive presentence report which strongly recommended incarceration; and all of the evidence, facts and inferences which it had drawn from the conduct of the trial itself. The trial court specifically stated:

". . . I have listened to your attorney's argument and also the argument of Mr. Bussey [prosecution], and the Court has carefully considered the presentence investigation which has been submitted to this Court.

"I understand the argument that your attorney has made in that you do not have any prior convictions. However, I feel many of the arguments made by Mr. Bussey have merit and that a period of straight probation would be inappropriate in this type of case."

In its argument at sentencing, the prosecution was careful to point out that:

". . . [T]hese records of the delinquencies with the prior corporations of which the defendant was president are not to be given the same weight as proven criminal charges. The defendant was not charged criminally with those, and he hasn't been convicted of those. But I do think that one is entitled to look at those. . . ."

The particular evidence relating to Johnson's association with prior corporations was properly admitted for the limited purpose of their relevancy on the issue of knowledge and willfulness. The trial court could consider, for sentencing purposes, that evidence as indicating a pattern of Johnson's past behavior and as relevant to the degree of his culpability. *See Triplett v. State* (1971), 51 Wis.2d 549, 187 N.W.2d 318, and *State v. Schilz* (1971), 50 Wis.2d 395, 184 N.W.2d 134. The record is barren of any inference that the trial court considered any "unproven wrongful acts" of Johnson when imposing sentence.

The trial court did not abuse its discretion when imposing sentence.

*By the Court.*—Order affirmed.