COURT OF APPEALS
DECISION
DATED AND FILED

July 14, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP306-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2015CF2171**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

ISABEL ORTEGA, JR,

      DEFENDANT-APPELLANT.

      APPEAL from a judgment of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge. *Affirmed*.

      Before Brash, P.J., Blanchard and White, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Isabel Ortega, Jr., appeals a judgment of conviction entered after a jury found him guilty of four sexual offenses against his daughter, Rosa.[1]  He contends that the circuit court erroneously admitted other-acts evidence at his trial.  We affirm.

## Background

¶2    In 2015, the State accused Ortega of committing multiple sexual offenses against Rosa.  According to the criminal complaint, the first incident occurred during the period from January 1, 2005, through December 31, 2006, while Rosa was younger than thirteen years old and in the third grade.  The State alleged that during this period, Rosa awoke during the night to discover that Ortega was digitally penetrating her vagina.  The State next alleged that during the period from 2009 until 2010, while Rosa was younger than sixteen years old and in the sixth grade, Ortega fondled her breasts.  The State further alleged that during the period from 2010 through 2011, while Rosa was younger than sixteen years old and in the seventh grade, Ortega put his mouth on her breasts and that, in the summer of the year she attended seventh grade, he began having daily sexual intercourse with her vaginally, orally, or both, sometimes engaging in three sexual acts in a day.  Next, the State alleged that during the period from 2012 through 2013, while Rosa was younger than eighteen years old, Ortega used her bed and engaged in sexual activity with her "almost like they were husband and wife."  Finally, the State alleged that Ortega engaged in sexual intercourse with Rosa in

---

[1] To protect the privacy of the victim, we refer to her as Rosa, a pseudonym.  *See* WIS. CONST. art. I, § 9(m), WIS. STAT. RULE 809.86(5)(2017-18).  All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

October 2014, some weeks after her eighteenth birthday. At the end of that month, she moved out of his residence.

¶3 The State ultimately charged Ortega with five felonies: first-degree sexual assault of a child who had not reached the age of thirteen years; repeated sexual assault of a child; incest with a child; third-degree sexual assault; and incest. Ortega pled not guilty and demanded a jury trial.

¶4 In pretrial proceedings, the State moved to admit other-acts evidence, namely, that Ortega used controlled substances and alcohol and that he had a past history of physically abusing Rosa and another of his daughters. As grounds, the State asserted that the other-acts evidence provided context for the charged crimes and established Rosa's credibility and state of mind. In support, the State argued that because Ortega was often under the influence of drugs or alcohol while sexually assaulting Rosa, she excused his behavior and did not report the incidents when they occurred. Further, the State argued that Ortega's physical abuse of Rosa and her sister explained why Rosa feared the consequences of reporting his actions and also tended to refute any inference that Rosa consented to the sexual intercourse that took place after she reached adulthood. The circuit court granted the State's motion over Ortega's objection. The circuit court added that it would give a special instruction to the jury limiting the purposes for which it could consider the other-acts evidence.

¶5 The case proceeded to a jury trial in 2016.[2] The State's case included the other-acts evidence referenced above. The circuit court gave a

---

[2] The case first went to trial in 2015. The jury was unable to reach a verdict in that proceeding, and the circuit court declared a mistrial.

limiting instruction, cautioning the jury that it could not use the other-acts evidence to conclude that Ortega was a bad person or that he had a particular character trait and acted in conformity with that trait. The instruction further provided that the jury could use the other-acts evidence only for purposes of considering "context or background," "the complete picture of the evidence related to the offenses charged," and the "alleged victim's state of mind." The jury acquitted Ortega of first-degree sexual assault of a child younger than thirteen years old and convicted him of the other crimes. He appeals, challenging only the admission of the other-acts evidence.

## Discussion

¶6 Ortega claims that the circuit court improperly applied WIS. STAT. § 904.04(2). The statute provides, with an exception not relevant here, that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." *See* § 904.04(2)(a). The statute, however, "does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See id.*

¶7 Whether to admit other-acts evidence lies within the circuit court's discretion. *See **State v. Sullivan***, 216 Wis. 2d 768, 780, 576 N.W.2d 30 (1998). Accordingly, on appeal we assess "whether the circuit court 'reviewed the relevant facts; applied a proper standard of law; and using a rational process, reached a reasonable conclusion.'" ***State v. Payano***, 2009 WI 86, ¶41, 320 Wis. 2d 348, 768 N.W.2d 832 (citations omitted). Our review is deferential: if the record reveals a basis for the circuit court's decision, we will uphold it. *See **id.***

4

¶8    A circuit court conducts a three-step analysis to determine the admissibility of evidence under WIS. STAT. § 904.04(2). *See Sullivan*, 216 Wis. 2d at 772. The analysis requires the circuit court to determine whether: (1) the evidence is offered for a permissible purpose, as required by § 904.04(2)(a); (2) the evidence is relevant within the meaning of WIS. STAT. § 904.01; and (3) the probative value of the evidence is substantially outweighed by unfair prejudice or other concerns enumerated in WIS. STAT. § 904.03. *See Sullivan*, 216 Wis. 2d at 772-73.

¶9    Additionally, when the defendant is on trial for a sexual offense, "'Wisconsin courts permit a more liberal admission of other [acts] evidence....' Accordingly, in a sex crime case, the admissibility of other acts evidence must be viewed in light of the greater latitude test." *State v. Hunt*, 2003 WI 81, ¶86, 263 Wis. 2d 1, 666 N.W.2d 771 (citation omitted). The greater latitude test, also called the greater latitude rule, operates "to facilitate the admissibility of the other acts evidence under the exceptions set forth in WIS. STAT. § 904.04(2)(a)."[3] *See State v. Dorsey*, 2018 WI 10, ¶33, 379 Wis. 2d 386, 906 N.W.2d 158 (citations and brackets omitted). The rule applies to each prong of the admissibility analysis, *see id.*, and is not limited to prior acts that are similar to the charged conduct for which

---

[3] Courts refer interchangeably to the "greater latitude test" and the "greater latitude rule." *See, e.g.*, *State v. Hunt*, 2003 WI 81, ¶¶84-86, 263 Wis. 2d 1, 666 N.W.2d 771. We refer to the "greater latitude rule" throughout the remainder of this opinion.

the defendant is on trial, *see **Hunt***, 263 Wis. 2d 1, ¶¶26, 83-88.[4]  In circumstances where the rule applies, "circuit courts should admit evidence of other acts with greater latitude under the ***Sullivan*** analysis to facilitate its use for a permissible purpose."  *See **Dorsey***, 379 Wis. 2d 386, ¶33.

¶10    In this case, the circuit court preliminarily concluded that it was required to apply the greater latitude rule in analyzing the admissibility of other-acts evidence.  We agree.  Ortega faced multiple sexual offense charges, and ***Hunt*** therefore dictated application of the rule.  *See **id.***, 263 Wis. 2d 1, ¶86.  Indeed, Ortega does not argue otherwise.  Accordingly, we review the circuit court's ***Sullivan*** analysis in light of the greater latitude rule.

¶11    The first step of the ***Sullivan*** analysis requires an acceptable purpose for the proposed admission of the other-acts evidence.  *See **Payano***, 320 Wis. 2d 348, ¶63.  The potential admissible purposes are "'almost infinite,'" and the party seeking admission "'need only identify a relevant proposition that does not depend upon the forbidden inference of character as circumstantial evidence of conduct.'"  *See **State v. Marinez***, 2011 WI 12, ¶25, 331 Wis. 2d 568, 797 N.W.2d 399

---

[4]  Pursuant to WIS. STAT. § 904.04(2)(b), courts are required to apply the greater latitude rule to "similar" acts in trials involving enumerated types of cases.  *See **id.***  However, the greater latitude rule originated under common law, *see **State v. Dorsey***, 2018 WI 10, ¶32, 379 Wis. 2d 386, 906 N.W.2d 158, and the State asserts that the statutory mandate in § 904.04(2)(b) "did not abrogate the common law greater latitude rule that applies even if the charged conduct and the other act are dissimilar."  In support, the State cites ***Fuchsgruber v. Custom Accessories, Inc.***, 2001 WI 81, ¶25, 244 Wis. 2d 758, 628 N.W.2d 833 (stating that "[a] statute does not change the common law unless the legislative purpose to do so is clearly expressed in the language of the statute").  Ortega has not filed a reply brief and accordingly offers no argument to refute the State's contention.  We take Ortega's silence on this issue as a concession that the State is correct.  *See **State v. Normington***, 2008 WI App 8, ¶44, 306 Wis. 2d 727, 744 N.W.2d 867.

(citations omitted). Accordingly, "this 'first step is hardly demanding.'" *See Payano*, 320 Wis. 2d 348, ¶63 (citation and emphasis omitted).

¶12 Here, the State proposed admitting other-acts evidence to show the context of the crimes and to establish Rosa's credibility and state of mind. These are permissible bases on which to admit other-acts evidence, *see Marinez,* 331 Wis. 2d 568, ¶27, and each proposed basis had a direct relationship to the State's case that did not implicate "'the forbidden inference of character as circumstantial evidence of conduct,'" *see id.*, ¶25 (citation omitted). Specifically, the evidence that Ortega was intoxicated while sexually assaulting Rosa "'complete[d] the story of the crime on trial.'" *See State v. Pharr*, 115 Wis. 2d 334, 348, 340 N.W.2d 498 (1983)(citation and one set of quotation marks omitted). Additionally, the evidence of his intoxication and his past history of physically abusing his daughters described the specific context in which the alleged sexual assaults occurred, *see Hunt*, 263 Wis. 2d 1, ¶58, and provided a basis for assessing Rosa's credibility in light of her delay in reporting the childhood sexual assaults, *cf. id.*, ¶¶58-59 (holding that physical abuse and substance abuse were admissible to establish credibility of the victim and witnesses in light of their recantation of child abuse accusations).

¶13 Ortega argues on appeal that the State did not identify a proper purpose for admitting other-acts evidence because "the State mention[ed] off-handedly that it wishe[d] to admit this evidence for the purpose of motive." He continues: "[a]s used by the State in its brief in support of this other acts evidence, 'motive' is given such a broad definition that it is synonymous with the definition

of propensity." Ortega does not identify the place in the transcript or in any State's brief where the State argued that it sought to admit other-acts evidence to show motive, and we have not located such an argument in the record.[5] Moreover, the circuit court found that the State sought to admit the evidence to show context and to establish Rosa's credibility and state of mind. These are proper purposes for admission, particular in light of the greater latitude rule. *See Marinez*, 331 Wis. 2d 568, ¶4. Thus, even assuming that the State also improperly proposed motive as a basis to admit other-acts evidence here, the first *Sullivan* prong was satisfied because "[a]s long as the State and circuit court have articulated at least *one* permissible purpose for which the other-acts evidence was offered and accepted, the first prong of the *Sullivan* analysis is met." *See Marinez*, 331 Wis. 2d 568, ¶25.

¶14 The second step in the *Sullivan* analysis requires a showing that the proposed other-acts evidence is relevant. *See id.*, 216 Wis. 2d at 772. "Evidence is relevant ... if it relates to a fact or proposition that is of consequence to the determination of the action and if it has probative value." *State v. Hammer*, 2000 WI 92, ¶30, 236 Wis. 2d 686, 613 N.W.2d 629. We have observed that relevance is "not a high hurdle." *See State v. White*, 2004 WI App 78, ¶14, 271 Wis. 2d 742, 680 N.W.2d 362

---

[5] This court will not scour the record for facts supporting a party's contentions. *See State v. Carter*, 2017 WI App 9, ¶21, 373 Wis. 2d 722, 892 N.W.2d 754. We nonetheless observe that the only mention of "motive" that we find in the State's arguments occurred when the State quoted the text of WIS. STAT. § 904.04 in a circuit court brief. We caution appellate counsel that we expect litigants to pay scrupulous attention to their description of the record and to direct this court to the precise places in the record that support the litigants' contentions on appeal. *See* WIS. STAT. RULE 809.19(1)(e) (2017-18).

¶15     Here, the State contended that Ortega's prior acts of physical abuse and Ortega's intoxication while sexually assaulting Rosa were relevant to resolving the question of why she did not report the alleged sexual abuse for many years after it began.  Specifically, the State argued that both the physical abuse and the intoxication explained why Rosa excused Ortega's actions and feared the ramifications of reporting the crimes.  *Cf. Hunt*, 263 Wis. 2d 1, ¶¶12-15, 58-59 (recognizing that drug use and physical abuse of family members are relevant to explain a victim's state of mind in light of recantations of sexual abuse allegations).  The State also argued that Ortega's prior acts of physical abuse were relevant to refute a claim that Rosa consented to sexual intercourse with Ortega when she reached adulthood.[6]  *See State v. C.V.C.*, 153 Wis. 2d 145, 160-62, 450 N.W.2d 463 (Ct. App. 1989) (concluding that prior violent acts were relevant to show that the victim did not consent to sexual assault).

¶16     On appeal, Ortega first offers a one-paragraph argument that the other-acts evidence here was not relevant because the victim testified about both the other acts and the charged crimes.  In support, he cites *State v. Johnson*, 74 Wis. 2d 26, 245 N.W.2d 687 (1976), which he believes requires rejection of such testimony from a victim because "the complaining witness is simply collaborating [sic] herself by a self-serving statement."  Ortega misunderstands *Johnson*. There, the supreme court held that a defendant could not cross-examine a witness to elicit testimony describing the defendant's self-serving out-of-court statements because such testimony is inadmissible hearsay.  *See id.* at 37-38.  *Johnson* offers

---

[6] Before the State could obtain a conviction for third-degree sexual assault in this case, the State was required to prove that Rosa did not consent to sexual intercourse with Ortega. *See* WIS. STAT. § 940.225(3) (2013-14).

9

no assistance in analyzing the relevance of a victim's testimony about the defendant's other acts.[7]

¶17 Second, Ortega argues that the evidence of his physical abuse and intoxication was irrelevant because the State did not demonstrate that the other acts and the charged crimes were similar, as measured by the "nearness in time, place and circumstances between the other act[s] and the alleged crimes." In support, he cites *State v. Scheidell*, 227 Wis. 2d 285, 595 N.W.2d 661 (1999), but that case does not aid him. *Scheidell* tied relevance to nearness in time, place, and circumstances because in that case the State offered other-acts evidence to prove identity. *See id.* at 304-05. Our supreme court has since clarified that "'similarity' and 'nearness' are not talismans," and that "[r]elevancy is not determined by resemblance to, but by the connection with, other facts." *See Payano*, 320 Wis. 2d 348, ¶70 (citations, brackets, and some quotation marks omitted). Indeed, relevance "'is a common sense determination based less on legal precedent than life experiences.... The issue of relevancy must be determined by the trial judge in view of his or her experience, judgment and knowledge of human motivation and conduct.'" *Id.* (citations and some quotations marks omitted).

---

[7] Our supreme court considered several issues in *State v. Johnson*, 74 Wis. 2d 26, 245 N.W.2d 687 (1976), which involved charges of willful failure to deposit withholding taxes. *See id.* at 31-33. Ortega's citation to *Johnson* does not include any pinpoint citation to guide us to the place in the opinion that Ortega considers helpful to his position. The substance of his argument leads us to conclude, as did the State, that he relies on the *Johnson* court's analysis of the hearsay issue. We note, however, that the case also involved the issue of whether certain exhibits were admissible as other-acts evidence. *See id.* at 39. The *Johnson* court held that the exhibits, which reflected prior failures to deposit withholding taxes and prior accumulated deficiencies, were relevant to show the defendant's knowledge and the willfulness of his conduct. *See id.* at 41-43. For the sake of completeness, we observe that nothing in this analysis supports Johnson's thesis that a victim may not testify about a defendant's prior acts.

¶18   The circuit court here agreed with the State and determined that the other-acts evidence was relevant in regard to the questions of why Rosa did not report sexual abuse while she was a child in Ortega's home and whether she consented to sexual relations with Ortega when she was an adult.  In light of *Payano*, *Hunt*, and *C.V.C.*, the circuit court reached a reasonable conclusion and, accordingly, we will not disturb it.  *See Payano*, 320 Wis. 2d 348, ¶41.

¶19   The third step of the *Sullivan* analysis required the circuit court to determine whether the probative value of the proffered evidence was substantially outweighed by the risk of unfair prejudice.  *See id.*, 216 Wis. 2d at 772-73.  The terms on both sides of this equation are well-understood.  Specifically, probative value is a function of relevance and of the proponent's need for the evidence in question.  *See Marinez*, 331 Wis. 2d 568, ¶41.  Unfair prejudice refers to "whether the evidence tends to influence the outcome of the case by improper means."  *See id.* (citations and some quotation marks omitted).  "Because [WIS. STAT. § 904.04(2)(a)] provides for exclusion only if the evidence's probative value is substantially outweighed by the danger of unfair prejudice, 'the bias ... is squarely on the side of admissibility.  Close cases should be resolved in favor of admission.'"  *Marinez*, 331 Wis. 2d 568, ¶41 (citation, emphasis, and brackets omitted).

¶20   The State argued here that, due to Rosa's substantial delay in disclosing years of childhood sexual abuse, the other-acts evidence was necessary for the jury to understand the "atmosphere of fear" within the home and the rationalizations that Rosa used to excuse the conduct.  Indeed, our supreme court has recognized that where a crime involves a young victim, other-acts evidence is "particularly relevant" to address the "'need to corroborate the victim's testimony

11

against credibility challenges.'" *See State v. Hurley*, 2015 WI 35, ¶59, 361 Wis. 2d 529, 861 N.W.2d 174 (citation omitted).

¶21 The circuit court agreed with the State, finding that it required the proposed other-acts evidence to explain the context of the criminal activity and the victim's state of mind. The circuit court acknowledged Ortega's concern that the jury would use the other-acts evidence to conclude that Ortega was "a bad person and therefore must have committed these offenses." The circuit court determined, however, that it could craft a limiting instruction sufficient to clarify for the jurors that they could consider the other-acts evidence only for the purposes for which it was offered.

¶22 On appeal, Ortega argues that "it is incredibly naïve to believe that a viable limiting instruction could be drafted that would prevent the jury from making a forbidden inference that Ortega is a bad man." In support, he cites a 1932 opinion of the Second Circuit Court of Appeals and a 1949 concurring opinion of a United States Supreme Court justice.[8] Ortega's argument does not comport with Wisconsin law. In this state, we have long recognized that "delivery of a limiting or curative instruction serves to eliminate or minimize the risk of undue prejudice." *See State v. Parr*, 182 Wis. 2d 349, 361, 513 N.W.2d 647 (Ct.

---

[8] In addition to citing the 1932 and 1949 federal opinions described above, Ortega cites *United States v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996), to support his assertion that "one court has explained that the 'reverberating clang' of other acts will drown out the 'weaker sound' of the evidence that the defendant committed the present act." Ortega's citation to *Merriweather* is misleading. He offers it in the context of disputing the efficacy of a limiting instruction, but *Merriweather* explains that the risk of a "'reverberating clang' ... might well have been reduced by a clear and concise instruction identifying for the jurors the specific purpose for which the evidence was admissible and limiting their consideration of the evidence to that purpose. Of course, no such narrowly limiting instruction was given." *See id.* at 1077-78 (citation omitted). The jury that decided Ortega's case, however, received just such a limiting instruction.

App. 1994); *see also* **Marinez**, 331 Wis. 2d 568, ¶41 (reflecting the ongoing vitality of Wisconsin's rule regarding the effectiveness of limiting instructions).

¶23 Ortega also argues that the jurors were necessarily "improperly swayed by the flammable [sic] things that they heard about" him, but he fails to offer any reason to conclude that testimony about his drug and alcohol use or about his acts of physical abuse was so horrifying as to overwhelm the jury and prevent a fair assessment of the evidence. Indeed, the jury acquitted him of one of the most serious charges he faced, first-degree sexual assault of a child younger then thirteen years old. An acquittal "substantially undercuts [an] argument that the other acts evidence was unfairly prejudicial." *See* **Parr**, 182 Wis. 2d at 362.

¶24 In sum, the record reflects that the circuit court considered the relevant facts, applied the correct law, and reasonably concluded that the proposed other-acts evidence was offered for permissible purposes, relevant to serve those purposes, and not unfairly prejudicial. We therefore conclude that the circuit court properly exercised its discretion in admitting the evidence.

¶25 The State ends its respondent's brief with a discussion of whether admission of the other-acts evidence in this case constituted harmless error. Because we are satisfied that the circuit court did not err, we need not address the State's contentions in this regard. *See* **State v. Castillo**, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds.").

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).