State ex rel. Swenson, and Swenson, vs. Norton.

STATE ex rel. SWENSON, and SWENSON, vs. NORTON.

QUO WARRANTO: TITLE TO OFFICE: EVIDENCE: JUDGMENT. *(1, 2) When objection to evidence must be specific. (3)* Prima facie *evidence of title to a certain office. (4) Rebuttal of such evidence: When judgment of* ouster *goes. (5) Further proof required to show right of relator.*

1. Where evidence is competent in the case for any purpose, its admission against a mere general objection is not error.
2. In an action to try title to office, in order to exclude evidence of the illegality of votes cast for a party on the ground that such party has not been served with notice of the claim that such votes were illegal, etc., as required by the rule of this court of March 3, 1869, the evidence must have been objected to specifically upon that ground.
3. In an action to try title to the office of chairman of town supervisors (the statute not providing for any formal written *certificate* of election to that office), the result of the canvass made by the inspectors of the election, declared by such inspectors, is *prima facie* proof of the election of the person so appearing to have been elected.
4. Where in such an action it appeared, not only that two more votes were cast than were included in the canvass, but that a plurality of the votes actually cast were in favor of S., the relator, and not of N., the defend-

ant, who appeared by the canvass to have been elected, the *prima facie* effect of such canvass was overcome; and, in the absence of further evidence on his part, *judgment of ouster should have gone against N.*

5. But where there was also evidence tending to show that a part of the votes so cast for S. were *illegal*, a further judgment that he was entitled to the office could be rendered only upon a verdict that he received a majority of the legal votes cast.

APPEAL from the Circuit Court for *Chippewa* County.

Action in the nature of *quo warranto*, to determine title to an office. The pleadings and evidence, and the errors assigned, will sufficiently appear from the opinion. The verdict declares that the jury "find for the defendant, and that he was duly elected on the 2d day of April, 1878, as chairman of supervisors of the town of Flambeau . . . ; that he qualified within the time required by law, and is entitled to the possession and to exercise the duties of [the office of] chairman of supervisors of said town, during the term for which he was elected." From a judgment in pursuance of the verdict, *Swenson*, the relator and one of the plaintiffs, appealed.

For the appellant, there was a brief by *W. F. Bailey*, his attorney, with *J. M. Bingham*, of counsel, and oral argument by *Mr. Bailey*.

For the respondent, there was a brief by *Hollon Richardson*, *Jenkins & Boland*, and *Wheeler & Marshall;* and oral argument by *Mr. Richardson*.

TAYLOR, J. This is an action to determine the right to the office of chairman of the board of supervisors of the town of Flambeau, in Chippewa county. The relator and the respondent both claim to have been elected to that office at the town meeting held in that town on the 2d day of April, 1878.

The evidence shows that, according to the canvass made by the inspectors of the election, it was declared by them that the respondent, *Norton*, had received forty-three votes, the relator, *Gilbert Swenson*, thirty-one votes, and one William Waite fifteen votes, for the office of chairman of the board of super-

visors of said town, and that said *Norton* was duly elected to said office; and that he afterwards duly qualified, and has since exercised the duties of such office. The evidence also shows that, according to the poll-lists kept at such election, ninety-one persons voted for chairman of the board; and that, when the votes were counted, only eighty-nine ballots were found in the box for such office.

The relator, in his complaint, amongst other things, sets forth at length the names of fifty-nine persons, who, he claims, voted for him for the office of chairman of the board of supervisors of said town at said town meeting, and charges that the inspectors, or some one of them, or some one with their knowledge or consent, fraudulently, designedly, and with intent to cheat and defraud the relator out of an election to said office of chairman, and to count in and procure the election of said *Norton* to said office, opened the ballot box and removed therefrom a number of the ballots which had been cast for the relator, and substituted therein, in their place, an equal number of ballots which had not been voted, and containing the name of the respondent for that office, and a sufficient number thereof, to wit, twenty-nine, to make the result as declared by said inspectors at the close of the polls on that day.

The respondent, by his answer, admits that there was an election on said second day of April, 1878, in said town, for the election, among other officers, of chairman of the board of supervisors; and that at noon there was an adjournment for one hour, to enable the clerks and inspectors to get dinner; and then denies each and every other allegation in the complaint. As a separate answer, he alleges that he received a majority of all the legal votes cast at said town meeting for said office of chairman of the board of supervisors; that he was then and there duly and legally elected to said office; that said votes were duly canvassed by the board of inspectors; that he was by said inspectors duly declared elected to said office; that he duly qualified within the time prescribed by law, and

State ex rel. Swenson, and Swenson, vs. Norton.

entered upon the duties of said office; and that he has ever since been, and is now, in discharge of the duties thereof.

Upon the trial of the action, the relator called forty-five persons, whose names appeared upon the poll-lists of said election, who severally swore that they voted, at such election, for the office of chairman of the board of supervisors of said town, and that they voted for the relator for such office. He also made proof that eight other persons, whose names were on said poll-lists, cast their votes for him at such election, for said office of chairman. The relator also gave evidence for the purpose of showing that the ballot box might have been opened, and ballots voted removed, and others substituted in their place.

The defendant gave no evidence of the fact that any elector voted for him at such election for the office of chairman of the board of supervisors. He did give evidence tending to show that the ballot box had not been opened, or ballots voted removed therefrom, and others substituted in their stead. He rested his right to the office wholly upon the fact that the canvass of the votes found in the ballot box at the close of the election showed that he had received a plurality of the votes cast for that office, and that the inspectors had declared him duly elected to said office; and insisted that the evidence produced by the relator was not sufficient to rebut the presumption arising from such canvass, that he was duly elected to said office.

The relator alleges the following errors committed on the trial in the court below:

1. That the court erred in permitting the defendant to cross-examine his witnesses for the purpose of showing that they were not legal voters at such election.

. 2. That the court erred in refusing the instructions asked by the relator.

3. That the court erred in the instructions given to the jury.

4. That the judgment and verdict are against, and not sustained by, the evidence.

The first ground of error is based upon a rule of court adopted March 3, 1869, relating to proceedings in all actions of *mandamus* and *quo warranto*. The rule is as follows, so far as the same is applicable to this case: "In all actions of *mandamus* or *quo warranto*, in any of the courts of this state, in which the result of any election shall be in issue, before either party shall be permitted to offer proof, upon the trial, of the illegality of the vote of any person who voted at such election, he shall show to the court that he has, at least twenty days before the commencement of the trial, served upon the opposite party a notice in writing that he claimed the vote of such voter to be illegal, stating the grounds of such illegality."

.In this case, the relator having set forth at length the names of all the persons who, he claims, voted for him at the election. in controversy, there can be. no doubt that the defendant was called upon, by the provisions of the foregoing rule, to give notice as therein required, before he could be legally permitted to question the legality of any vote cast at such election by any of the persons named in the complaint of the relator. We are of the opinion, however, that, in order to exclude the evidence upon the ground of the want of such notice, it was the duty of the relator to have specified the want of such notice as the ground of his objection, at the time the evidence was offered; and as the only objection made was a general objection to evidence, without a specification of any ground or reason for the same, it cannot avail the party in this court. In this case, the question of the legality of the votes cast by the relator's witnesses was a question which was clearly triable in the court below upon the issues in the case; the evidence, therefore, of the want of the necessary qualifications of an elector on the part of the witnesses who testified that they voted for the relator, was neither incompetent nor immaterial; but it was not admissible without first

showing that the notice required by the rule had been given, had it been objected to for that reason. Had the objection to the evidence been based upon that ground, however, it might have been avoided by proof that the notice had been given; or, if the notice had not been given, it is to be presumed that the court below, having its attention called to the fact that no such notice had been given, would have rejected the evidence.

The general rule is, that every objection to evidence must, in order to avail the party making the same, specify the grounds on which it is made; and if the evidence is received over a general objection specifying no grounds, the reception of such evidence cannot be alleged as error in this court, unless it appears that the same was incompetent in the case for any purpose. *Bowman v. Van Kuren*, 29 Wis., 209–215; *Neis v. Franzen*, 18 Wis., 537; *Tomlinson v. Wallace*, 16 Wis., 225; *Fountain v. Pettee*, 38 N. Y., 184; *Ayrault v. Pacific Bank*, 47 N. Y., 570; *Merritt v. Seaman*, 6 N. Y., 168; *Cowperthwaite v. Sheffield*, 3 N. Y., 243. Nor will it be ground [of error in this court if incompetent evidence be received under a general objection, when, if the specific grounds of the objection had been stated, the party offering such evidence might have given competent evidence to prove the same fact. *Best v. Davis*, 18 Wis., 386; *Evans v. Sprague*, 30 id., 303. In the case of *Best v. Davis*, the late learned Chief Justice Dixon says: "The objection to the form of the certificate is too vague and uncertain to be available in this court. It is, in general terms, to the introduction of the notice of pendency of action, without specifying any ground upon which it is made. It should be specific, and clearly point out the defect complained of, in order that the opposite party may, if he can, remedy it upon the trial below. In most cases, the opposite party has it in his power to obviate such defects at the trial. They are usually the result of clerical mistakes or oversights, and it would be most unjust to allow them to come here upon general objections which give neither the party nor

the court any information at all. Such a practice cannot be sustained." This case was cited in *Evans v. Sprague, supra*, and approved. In this last case, a certified copy of a chattel mortgage was offered in evidence, and received against a general objection. It was urged in this court, that such certified copy was incompetent evidence, because the original mortgage was not filed and recorded in the proper town, and the certified copy was made by the town clerk of such town. But the court say: " It was a mere general objection, specifying no grounds or reason at all for rejecting the copy. . . . . If the true ground of objection had been stated, the plaintiff might have obviated it by the production of the original mortgage at the trial. The objection, to have been sufficient, should have been so made as to have given the plaintiff this opportunity, or opportunity to have established the admissibility of the copy by further proof; and, because it was not so made, it is not available to the defendant in this court." There can be no doubt of the justice of the rule above stated, and it is in accordance with the rule established by this court, which requires all exceptions to instructions given by the court to the jury upon the trial of an action, and all exceptions to findings of fact or conclusions of law in cases tried by the court, to be specific, and point out, with reasonable certainty, the particular portions of such instructions or findings to which exception is taken, in order to be available to the party taking the same. We are of the opinion, therefore, that the first ground of error is not well taken.

Upon the second point, the record shows that, upon the conclusion of the evidence in the case, the relator asked the court to give the following instruction to the jury: " That, the plaintiff and relator in this action having given evidence to impeach the canvass of the votes and result of the election as declared by the board of canvassers, and having shown that *Gilbert Swenson* received a plurality of all the votes cast at the election for the office of chairman of supervisors of said

JANUARY TERM, 1879.     339

State ex rel. Swenson, and Swenson, vs. Norton.

town of Flambeau, the effect of such canvass and returns as evidence of the election of *John G. Norton* as such chairman was overcome and destroyed, and it then was incumbent upon the defendant to show, by other evidence, that he received a plurality of the votes cast at such election for such office; and, he having failed or neglected to do so, you must find from the evidence that *Gilbert Swenson* did receive a plurality of all the legal votes cast at such election for chairman of supervisors of said town, and was duly elected and entitled to said office, and judgment of ouster against said defendant."

This was, in effect, asking the court to charge the jury, that upon the whole evidence they should find for the relator and against the defendant's right to the office. This instruction was, we think, properly refused, because it asked the court to instruct the jury, as a matter of fact, that the relator, *Swenson*, had received a plurality of all the legal votes cast at such election for chairman of supervisors of said town, and was therefore duly elected and entitled to said office. Holding, as we do, that the evidence tending to show the illegality of the votes cast for *Swenson* was properly admitted against the general objection made by the relator, it was a question for the jury as to how many legal votes were cast for *Swenson*, and whether they constituted a plurality of the legal votes cast for such office.

The general charge given to the jury by the learned circuit judge is in fact a brief statement of what each party claims to have proven in the case, without any statement as to the effects which should be given to such proofs if the jury found one way or the other, and a statement of what constituted a residence, and the qualifications of a legal elector.

The whole of this general charge was objected to. We do not think this charge objectionable for what it contains; and if it be objectionable at all, it is on account of what it does not contain. If the learned judge erred in his general charge, it was rather an error of omission than of commission.

We think the first instruction asked by the counsel for the respondent, and given by the court, tended to mislead the jurors, by conveying the idea to them that, if the relator failed to show his right to the office, then they were at liberty to find in favor of the respondent, which, as we shall show hereafter, does not follow. The instruction was as follows: " In this case, the plaintiff, *Swenson*, cannot recover unless you believe, from the evidence, that there was fraud, and that he received a majority of the legal votes cast; and in determining the votes cast for *Swenson*, you will consider only such votes as were cast for *Swenson* for the office of chairman of supervisors." This instruction treats the case as though it were a personal action between *Swenson* and the defendant, whereas it is an action between the state and the defendant, so far as his right to hold the office is concerned; and as the instruction is given, unexplained by the general charge or any other special instruction, the jury might well infer that if *Swenson* was not entitled to recover, their verdict should be for the defendant. The charge that *Swenson* must " show fraud, and that he received a majority of the legal votes cast, to entitle him to recover," would be clearly erroneous as a general statement of the law. Ordinarily, the issue in such action is, simply, who received the majority of the legal votes cast for the office; and when that is shown, it is quite immaterial whether any fraud was shown or not; but as in this case the relator had charged fraud in his complaint as the ground for impeaching the canvass, and had not put his claim on any other ground, as applicable to the issues in the case it is possible this part of the charge was correct. The same remark may be applicable to the second and fifth instructions given at the request of the respondent's counsel, both of which proceed on the ground that the canvass must control unless it is impeached for fraud. This, as a general proposition of law, is incorrect, as the canvass can be avoided by showing a mistake as well as by showing fraud.

But, as we are disposed to place the reversal of this judg-ment upon the fourth ground of error alleged, that the verdict, which finds that the defendant was duly elected and is entitled to the possession of the office, is entirely unsupported by the evidence, we refrain from the further discussion of the in-structions given to the jury.

The record shows that the relator had produced forty-five persons whose names appear upon the poll-lists as voters at such election, and that each testified that he had voted for the relator for the office of chairman of the board of supervisors of said town at such election; and he also gave evidence strongly tending to prove that eight others had so cast their votes. It also appeared that the poll-lists contained two more names of persons as having voted for supervisors than there were ballots found in the box. This evidence was entirely uncontradicted by any evidence offered by the defendant. He rested his defense solely on the canvass of the inspectors of the election and the evidence given on his part tending to show that no ballots had been unlawfully taken from the box, and others substituted in their place.

In this state of the evidence, we are inclined to hold that the learned circuit judge should have directed the jury to find against the defendant's right to the office, and that the verdict given in favor of such right must be set aside as being unsup-ported by evidence. This court has lately had occasion to ex-amine the question as to the effect which must be given to the determination of the canvassers who are duly authorized to canvass the votes cast at an election and declare the result; and it was held that such canvass and declaration of result was presumptive evidence that the persons so declared elected were duly elected and had received a plurality of the votes cast at such election, and that such persons so declared elected were entitled to hold their respective offices until such de-clared result had been set aside by some competent court in a direct proceeding by *quo warranto*, instituted for that pur-

pose. *Supervisors of the Town of La Point v. O'Malley,* *ante,* p. 35. That case, as well as many others decided in this court, simply holds that the determination of such canvassers is presumptive evidence of a lawful election in favor of the person declared elected, but that his ultimate right to the office depends upon a fact which lies behind such canvass, to wit: that he received a plurality of the legal votes cast at such election for the office. *Att'y Gen. ex rel. Carpenter v. Ely,* 4 Wis., 420; *Att'y Gen. ex rel. Bashford v. Barstow,* 4 Wis., 567; *State ex rel. Burnett v. Pierpont,* 29 Wis., 608; *State ex rel. Holden v. Tierney,* 23 Wis., 430. The case above referred to further decides that such presumption is in effect conclusive in all other proceedings or actions, in favor of the party duly declared elected, except in the action of *quo warranto,* brought to test the right to the office.

It is also to be considered that, in an action of *quo warranto* against a party holding an office, the burden of proof is upon the defendant to show that he was duly elected or appointed to such office. High on Extraordinary Remedies, sec. 629, and cases cited in note. This he does, in the first instance, by the production of his certificate of election given by the proper officers, when such certificate is by law required to be given, and, in case no formal certificate of election is provided for, by showing that by the canvass of the votes at such election, made by the persons duly authorized to make the same, it appears that he received a plurality of the votes cast for such office, and perhaps, if the law so directs, that he was declared duly elected by such canvassers. *People v. Thacher,* 55 N. Y., 529, and cases there cited.

This evidence raises a presumption that he received a plurality of the legal votes cast at such election, and that he therefore rightfully holds the office; but this presumption, based upon the certificate of election or canvass, may be overcome by the evidence; and when it is so overcome, its effect is wholly destroyed, and such certificate or canvass can no longer

State ex rel. Swenson, and Swenson, vs. Norton.

be relied upon as sufficient evidence of the right of the party in whose favor it was made. Until impeached as being false, the certificate or canvass is a substitute, in favor of the party holding the same, or in whose favor the same was made, for evidence showing that in fact a plurality of the legal votes cast were cast for him; but when it is shown that the certificate or canvass is false, then the party claiming the office must show by other evidence that he received such plurality of the votes cast. See *People v. Thacher, supra.* The real issue in the action of *quo warranto* to test the right to an elective office, is, who received the plurality of the legal votes at such election; and it is not a sufficient answer to the complaint in such an action to allege simply that the incumbent holds the proper certificate of election, or that he was duly declared elected by the officers authorized by law to determine and declare in the first instance who is elected. See *People ex rel. v. Thacher,* 55 N. Y., 525–529, and cases there cited; High on Extraordinary Remedies, sec. 629, and cases cited in note. The respondent recognized this rule in his answer, and has in fact alleged that he did receive a plurality of the legal votes cast at such election for the office of chairman of supervisors of said town. The certificate of election, or the declaration of the proper officers, is therefore, as above, stated, upon the presumption that the same was fairly and honestly made, received in the first instance as a substitute for direct evidence showing that the plurality of the votes cast were cast for the incumbent. It follows as a consequence, that when it is shown by evidence that the certificate does not state the truth as to the result of such election, the presumption in favor of the incumbent, based upon such certificate, is rebutted; and then he must establish his right to the office by other evidence, in order to prevent a judgment of ouster against him. This question was fully discussed, and we think rightly decided, in the case of *The People v. Thacher, supra.*

It seems to us, that the evidence in this case shows very

State ex rel. Swenson, and Swenson, vs. Norton.

conclusively that the respondent did not receive the number of votes for the office of chairman of the board of supervisors, which the canvassers declared he had received; and it as conclusively shows that the relator received more votes for that office than the canvassers declared he had received.   These two things being shown, and it also appearing conclusively that two more persons voted for that office than there were ballots found in the box, the presumption in favor of the truthfulness of the canvass was destroyed, and the defendant could not successfully maintain his claim to the office without showing by other evidence that he received a plurality of the legal votes cast.   The fact that the jury might have found from the evidence that a large number of the votes cast for the relator were illegal votes, does not affect the result.   Whether they were legal or illegal votes, the fact remains that they voted, and voted for the relator; and that fact as effectually impeaches the truthfulness of the canvass as though they had been all legal voters.   The evidence offered by the defendant, of his right to hold the office, which raised a presumption in his favor, having been shown to be false, he could not thereafter rest his right upon it; and having failed to give any other evidence of such right, judgment of ouster should have passed against him.

Whether the relator had given sufficient evidence of his right to the office, is another and different question.   *Att'y Gen. ex rel. Bashford v. Barstow*, 4 Wis., 567.   In order to entitle him to a judgment, the burden of proof was upon him to show that a plurality of the legal votes cast at such election for the office of chairman of the board of supervisors, were cast for him; and, in determining that fact, the jury could and would have to pass upon the question of the legality of the votes cast at such election.   Upon that question we give no opinion, as it is unnecessary to the determination of the case.

*By the Court.* — The judgment of the circuit court is reversed, and the cause is remanded for a new trial.