HOLMES, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–662–CR. Submitted on briefs February 2, 1977.—Decided March 1, 1977.*
(Also reported in 251 N. W. 2d 56.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Robert J. Paul,* deputy state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general.

CONNOR T. HANSEN, J.   In this case the jury was selected and informed of both charges against the defendant.   Then, out of the presence of the jury, the defendant informed the trial court he desired to withdraw his plea of not guilty to the armed robbery charge and enter a plea of guilty thereto.   The trial court properly accepted the plea of guilty, entered a finding of guilty of armed robbery as charged, and withheld sentencing until after the completion of the jury trial on the attempted murder charge.

Considerable discussion followed, engaging the respective counsel and the trial judge.   The discussion related to whether the jury which had already been impaneled and informed of the two charges against the defendant, could now appropriately proceed to consider only the attempted murder charge.   It was ultimately agreed by both parties that the trial would proceed and that the trial judge would instruct the jury that the only issue before it for consideration was the attempted murder charge.   It was also specifically understood by both counsel and the trial court that during the course of the trial some reference would have to be made to the armed robbery which precipitated the chase between the defendant and police officers during which the shooting occurred that was the basis for the alleged attempted first-degree murder charge.

The jury returned and was informed that of the two charges they had previously learned about, only the second charge, attempted murder, would be the subject of the jury trial; that they were to concern themselves only with that charge; and that they were not to speculate about the disposition of the armed robbery charge.

Additional facts will be set forth in considering the principal issue in this case, which is:

Was it prejudicial error, under the circumstances of this case, for the trial court to admit testimony concerning the armed robbery during the defendant's jury trial for attempted murder?

During the trial, the state called as witnesses, a number of police officers. One of them was Detective Robert Allen. Allen testified that at approximately 10:50 p.m. he and his partner, Detective Morris Merriweather, received a radio dispatch concerning an armed robbery at the Riverside Theater located at 116 West Wisconsin avenue, in the city of Milwaukee. As they proceeded to the site of the robbery, at the intersection of Kilbourn and North 4th street, Allen observed a person matching the radio dispatch description and later identified as the defendant, running on North 4th street to a location behind the Journal Building. Allen testified that Merriweather stopped the car, and Allen exited and began chasing the defendant on foot calling "Hault, [sic] Police."

The defendant continued running onto North 3rd street. As Allen turned the corner, he observed the defendant about 30 feet away with a gun in his hand. Allen testified that the defendant fired the gun at him once; Allen returned one shot; and the defendant turned and continued running north on North 3rd street. Allen testified that as the defendant was running he turned and fired more shots at Allen. Allen finally lost sight of the defendant. However, as a result of police radio dispatches, other police officers arrived in the area and the chase continued with other shots being fired by the officers at the defendant. Ultimately, the chase culminated at the Milwaukee River in downtown Milwaukee, at which point the defendant dropped his gun on the ground and jumped into the river. He couldn't swim and was retrieved by the police and placed under arrest. The

defendant's .32 caliber revolver contained six spent cartridges and he had some live rounds of ammunition on his person. No one was struck by any of the shots.

After this evidence was in, the prosecution requested the court to hold a *Goodchild-Miranda* hearing to determine the admissibility of two statements made by the defendant to the police following his arrest, which the prosecution wished to offer in evidence. At this hearing, Detectives Morris Merriweather and James Kelley, and the defendant, testified. The defendant testified that he did give a statement to the police officers concerning the armed robbery, but denied that he had given any statement concerning the attempted murder or shooting at the police. The defendant also testified that the police officers had beaten him at the time of the arrest and during interrogation. Both officers had previously testified that no beatings had occurred.

The trial court found that the two statements were given voluntarily, knowingly and without threats, promises, force or coercion exerted upon the defendant, and that the statements could be introduced at trial. The prosecution then, and out of the presence of the jury, requested that it be permitted at trial to explore the full statements given by the defendant, which included portions of the armed robbery admission. The prosecution stated it was of the opinion this was necessary for the jury to understand the defendant's motive for running from the police and for shooting at the officer and the defendant's knowledge of why the officer was chasing him. The defense entered a general objection, and the trial court ruled that it was going to permit Officer Merriweather to testify on the issue.

The trial resumed, and the state called as witnesses, Detective Merriweather, Patrolman Dennis Waldoch, Detective Kelley, and Assistant District Attorney Frank Schiro. They testified in regard to facts relative to the attempted murder charge, and in addition Merri-

weather and Kelley testified in considerable detail concerning the armed robbery as related to them in statements given by the defendant. The defense made no objections to any of the testimony of these witnesses concerning the armed robbery.

The State rested. Defense counsel indicated that he would offer no testimony and made a motion to dismiss on the grounds that the intent element had not been proved. The motion was denied. Defense counsel motioned for a mistrial on the grounds that the officers went into too much detail relative to the armed robbery charge. The prosecution pointed out that there had been no objection by the defense counsel to the quantum of testimony introduced, and that it was necessary to produce evidence on the armed robbery to show a motive for the defendant's subsequent actions. The trial court considered the motion for a mistrial and denied it, and in doing so acknowledged that the prosecution may have gone into more detail than was necessary.

The defense rested without calling any witnesses. Closing arguments were made. The prosecutor subsequently stated for the record that in his closing argument he had told the jury to disregard any evidence concerning the armed robbery and that the only purpose for which such evidence had been admitted was to reflect the defendant's motive for flight.

The defendant asserts that there was a stipulation to exclude the armed robbery evidence. Our examination of the record does not support this assertion, and we find no evidence of such a stipulation.

The record reveals that the jury had been informed that the defendant was to be tried on two charges, armed robbery and attempted murder. When the defendant opted to plead guilty to the armed robbery charge and to proceed to trial only on the attempted murder charge, the problem arose as to how to inform the jury that they were no longer to consider the

armed robbery charge without telling them that the defendant had pleaded guilty thereto. The discussion between the trial court, defense counsel, and the two assistant district attorneys, was for that purpose. The result of that discussion was that the trial court would tell the jury that the only issue before them was attempted murder and that they were not to speculate as to the disposition of the armed robbery charge. The trial court subsequently did so inform the jury. The trial court, the assistant district attorney, and defense counsel, all agreed that, "We may have to make here some reference as to why the chase." That would necessarily entail the introduction of at least some evidence concerning the armed robbery. Defense counsel stated: "We would have no objection to that."

Therefore, the question before this court resolves itself to whether or not the evidence of the armed robbery was admissible under the rules of evidence and, if so, was it so prejudicial to the cause of the defendant as to require a reversal. The defendant advances his argument on this issue in the alternative: First, that all evidence concerning the armed robbery was irrelevant and inadmissible as it was "other-crimes evidence" which did not fall within any of the exceptions to the *"Whitty rule"*;[1] second, that if some evidence of the armed robbery was admissible to show possible motive for the defendant's flight and reason for the pursuit by the police, the quantum of such evidence introduced at trial was so prejudicial to the defendant as to require reversal.

*None of the Evidence Admissible:* The *Whitty* "other-crimes evidence" rule is now codified in sec. 904.04 (2), Stats., which reads:

"(2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible

---

[1] *Whitty v. State,* 34 Wis.2d 278, 149 N.W.2d 557 (1967).

to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Relevant evidence is defined in sec. 904.01, Stats:

*"904.01   Definition of 'relevant evidence'.* 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[2]

There can be no question that evidence relating to the armed robbery was relevant to the issue of the attempted murder charge, in that it provided the motive for the shooting at the police officer. The armed robbery, the flight with the officers in pursuit, and the attempted murder to evade apprehension, all arose out of a single transaction. The reason that the defendant shot at the police officer was to attempt to thwart his apprehension for the armed robbery.

In *Holmes v. State,* 63 Wis.2d 389, 217 N.W.2d 657 (1974), a case involving an armed robbery and attempted murder under circumstances very similar to those here, this court stated at p. 395:

"The trial court held that the charges of armed robbery and attempted murder were based on a same or single transaction. We agree, holding that the armed holdup, flight with officers in hot pursuit and attempted shooting to evade apprehension did constitute a single transaction. A successful holdup includes a successful getaway. . . ."

___

[2] *See also: Miller v. State,* 53 Wis.2d 358, 366, 192 N.W.2d 921 (1972); *Zebrowski v. State,* 50 Wis.2d 715, 724, 185 N.W.2d 545 (1971); *Berg v. State,* 41 Wis.2d 729, 739, 165 N.W.2d 189 (1969); and *Oseman v. State,* 32 Wis.2d 523, 526, 145 N.W.2d 766 (1966).

and at page 397:

". . . In the case before us, evidence as to the attempted murder would have been relevant on the getaway aspect of the armed robbery; evidence as to the armed robbery would have been relevant to the attempted murder charge as supplying motive. . . ."

In *Peters v. State*, 70 Wis.2d 22, 233 N.W.2d 420 (1975), the defendant therein was charged with burglary and the subsequent obstruction of an officer. This court stated at p. 30:

"In this case evidence of the burglary is admissible on the charge of obstructing an officer in order to show the motive for the obstruction. . . ."

The Wisconsin statutory definition of relevancy requires that the evidence introduced has a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable. The evidence need not, as the defendant asserts, bear directly upon one of the elements of the crime. It may, as here, bear on motive; or it may establish the presence of the defendant at the scene of the crime; or it may show that the defendant did the act involved; or it may bear upon any one of countless other factors which are of consequence to the determination of the action.

The evidence of the armed robbery was here clearly relevant to the attempted murder charge as supplying motive. Motive was "of consequence" to the determination of the action. It was not evidence introduced to prove the character of the defendant in order to show that he acted in conformity therewith. It was admissible under sec. 904.04 (2), Stats.[3]

---

[3] *Hough v. State*, 70 Wis.2d 807, 813, 235 N.W.2d 534 (1975); *State v. Amundson*, 69 Wis.2d 554, 569, 230 N.W.2d 775 (1975); *Bailey v. State*, 65 Wis.2d 331, 347, 222 N.W.2d 871 (1974); *Hendrickson v. State*, 61 Wis.2d 275, 279, 212 N.W.2d 481 (1973); *Herde v. State*, 236 Wis. 408, 413, 295 N.W. 684 (1941).

Here the attempted murder of the police officer was not an isolated event. The record reveals it was one of the final incidents in a series of events which began with the initial discussion of the armed robbery between the defendant and his accomplices; continued with the detailed planning of the robbery; neared completion with the execution of the plan; unexpectedly continued once again with the chase by the police and the defendant firing shots; and finally terminated with the defendant's apprehension at the Milwaukee River. The attempted murder was "near in time and place" to the armed robbery and evidence of the latter was also admissible to complete the story of the crime. *Bailey, supra,* 347.

Initially when the trial court determined that the prosecution might have to make "some reference as to why the chase," the defense counsel stated that he would have no objection to that. Later in the trial when the district attorney indicated his intention to have the police officers, specifically Merriweather and Kelley, testify to "the full statements given by the defendant which includes the portion of the armed robbery admission," the defense counsel stated: "Just for the record, I want to object to it, but——" The trial court, having discussed and decided the matter earlier, effectively overruled the objection and permitted the prosecution to proceed with testimony concerning the defendant's armed robbery admission.

Insofar as the objection may be taken as an objection to the introduction of *any* evidence concerning the armed robbery, it was properly overruled by the trial court. Evidence concerning the armed robbery was relevant and it fell within at least one of the sec. 904.04(2), Stats., exceptions to the general rule that "other-crimes evidence" is inadmissible.

In *State v. Johnson,* 74 Wis.2d 26, 245 N.W.2d 687 (1976), this court stated, at p. 41:

"Under section 904.04(2), Stats., two criteria must be met before evidence of other acts will be admitted: First, it must be relevant (see sec. 904.02, Stats.) ; and second, even if relevant, its probative value must not be substantially outweighed by the dangers of unfair prejudice, confusion of the issues or misleading the jury or by consideration of undue delay, waste of time or needless presentation of cumulative evidence. (See sec. 904.03, Stats.)"

The trial court, under this court's holding in *Whitty, supra,* 295, was required to balance the probative value of the evidence against any chance of unfair or undue prejudice to the defendant. *See also:* Sec. 904.03, Stats.[4] The trial court struck that balance in favor of admitting the evidence and determined that the probative value of the evidence concerning the armed robbery did outweigh substantially any chance of unfair or undue prejudice. The defendant does not contend that the trial court failed to engage in that balance, but rather that the result reached was in error.

Under the facts of this case, it cannot be said that the trial court abused its discretion in reaching the decision to admit evidence of the armed robbery. The evidence of that incident provided the motive for the charge of attempted murder and admission of such evidence did not constitute prejudice under the provisions of sec. 940.03, Stats. None of the grounds set forth in sec. 904.03, on which the trial court might exclude relevant evidence, are present here.

*Some of the Evidence Admissible:* The record reveals that at the time the district attorney stated that he desired to introduce evidence concerning the defendant's

---

[4] *"904.03 Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.* Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

admissions of the armed robbery, defense counsel objected. The objection was a general one indicating no basis therefor. This court has long held that an objection to evidence should be made in terms which apprise the court of the exact grounds upon which the objection is based and that general objections which do not indicate the grounds of inadmissibility will not be sufficient to entitle the objector to raise the question on appeal if, where the error might have been corrected if properly objected to, the evidence is competent for any purpose. *State ex rel. Hussong v. Froelich,* 62 Wis.2d 577, 602, 603, 215 N.W.2d 390 (1974); *Champlain v. State,* 53 Wis.2d 751, 758, 193 N.W.2d 868 (1972); *State v. Hoffman,* 240 Wis. 142, 149, 150, 2 N.W.2d 707 (1942); *State ex rel. Swenson v. Norton,* 46 Wis. 332, 337, 338, 1 N.W. 22 (1879).

Defense counsel was present during the testimony of Detective Kelley when he testified in establishing a factual basis for the defendant's guilty plea. Defense counsel was also present when Detectives Merriweather and Kelley testified during the *Goodchild-Miranda* hearing. Since the witnesses' testimony at trial, concerning the armed robbery, was substantially the same as that contained in the previous testimony, defense counsel was aware of the extent to which Merriweather and Kelley would testify if permitted.

· After his initial general objection, however, defense counsel never again objected as to the character of the evidence elicited during the taking of testimony. Defense counsel made no objections to the extent or detail of the testimony of Merriweather or Kelley while those detectives were testifying. Only after the testimony was in and the state had rested did defense counsel see fit to raise any objection; that via a motion for mistrial on the grounds that the detectives went into too much detail relative to the armed robbery charge.

This court has repeatedly held that one of the rules of evidence is that an objection must be made as soon as the opponent might reasonably be aware of the objectionable nature of the testimony. *West v. State,* 74 Wis.2d 390, 401, 246 N.W.2d 675 (1976); *Coleman v. State,* 64 Wis.2d 124, 129, 218 N.W.2d 744 (1974); *Gedicks v. State,* 62 Wis.2d 74, 84, 214 N.W.2d 569 (1974); *Nadolinski v. State,* 46 Wis.2d 259, 267, 268, 174 N.W.2d 483 (1970); *Collier v. State,* 30 Wis.2d 101, 104, 140 N.W.2d 252 (1966). Failure to object results in a waiver of any contest to that evidence. *Mentek v. State,* 71 Wis.2d 799, 808, 238 N.W.2d 752 (1976); *Bennet v. State,* 54 Wis.2d 727, 735, 196 N.W.2d 704 (1972); *State v. Torpy,* 52 Wis.2d 101, 109, 110, 187 N.W.2d 858 (1971); *Nadolinski, supra,* 268.

The failure to object to the testimony of Detectives Merriweather and Kelley at a time when the trial court could have considered whether the testimony concerning the armed robbery was of such proportions so as to prejudice the defendant; and at a time when the trial court could have taken corrective action; constitutes a waiver of any possible objection. Under the circumstances, where the objection was not properly raised in the trial court, this court will not review the asserted error on appeal. *State v. Spraggin,* 71 Wis.2d 604, 616, 239 N.W.2d 297 (1976); *Caccitolo v. State,* 69 Wis.2d 102, 114, 230 N.W.2d 139 (1975); *Werner v. State,* 66 Wis.2d 736, 751, 226 N.W.2d 402 (1975); *Brown v. State,* 59 Wis.2d 200, 214, 207 N.W.2d 602 (1973); *State v. Schneidewind,* 47 Wis.2d 110, 120, 176 N.W.2d 303 (1970).

Furthermore, we do not believe that the alleged error is so patently prejudicial that we should exercise our discretion and review the question. *State v. Spraggin, supra,* 616; *Werner, supra,* 751; *State v. Schneidewind, supra,* 120. Even if defense counsel had properly ob-

jected to the extent of the testimony of Detectives Merriweather and Kelley, the trial court's overruling of that objection would not have constituted error.

The evidence concerning the armed robbery was relevant both as to the motive for the attempted murder charge and as to presenting a full and complete picture of the defendant's activities as they related to the crime charged. This was not an armed robbery committed on the spur of the moment. The whole transaction involved both the careful planning and execution of the armed robbery and the attempted getaway. The testimony of Detectives Merriweather and Kelley attested to the care and preciseness with which the defendant and his accomplices planned and executed the robbery.

It was entirely proper for the trial court to allow the prosecution to place the events surrounding the defendant's attempted getaway and the resultant attempted murder charge within the context of the well-planned robbery. It was not an abuse of discretion, nor prejudicial error, for the trial court to admit either any evidence of the armed robbery or the quantum of evidence of the armed robbery which was admitted.

On this review, the defendant also argues that the trial court abused its discretion in sentencing the defendant.

During the sentencing phase of the proceeding, the trial judge inquired of the defendant as to the names of his accomplices. The record makes it clear that the defendant, his counsel, and the trial court, knew and understood that the defendant did not have to make this disclosure. Defense counsel also informed the trial court that he was not going to ask the defendant to do so. The defendant now contends that the sentence imposed was unduly harsh and that it constituted an abuse of discretion because the trial court based its sentencing decision upon the improper factor of the defendant's refusal to name his accomplices in the armed robbery. From our examination of the record, we find no reasonable inference to support this conclusion.

In *Harris v. State*, 75 Wis.2d 513, 250 N.W.2d 7 (1977), this court restated the standards of appellate review under which it would address an allegation of abuse of discretion in sentencing, and the factors which the trial court should consider in imposing sentence as well as those factors which could be considered. It was there pointed out that an abuse of discretion might be found where the trial court relied upon irrelevant or immaterial factors in arriving at the sentencing disposition. (Citing *State v. Johnson, supra,* 44.[5]

The defendant contends that the defendant's refusal to name his accomplices was an improper factor to consider in sentencing. The defendant relies upon this court's decision in *Scales v. State,* 64 Wis.2d 485, 219 N.W.2d 286 (1974); and federal court cases, *Thomas v. United States* (5th Cir. 1966), 368 Fed.2d 941; and *Williams v. United States* (D.C.C.A. 1972), 293 Atl.2d 484, in support of his proposition. In each of those cases, after the trial and a finding of guilt, the respective trial courts, at sentencing, attempted to get the defendants to admit their guilt in one way or another. In *Scales, supra,* and *Thomas, supra,* the defendants were invited to demonstrate remorse and acknowledge responsibility for the crime, or to make a clean breast of guilt. In *Williams, supra,* the trial court attempted to get the defendant, who had been convicted of possession of narcotics, to name his supplier. Such a disclosure in effect would have constituted an admission of guilt. Contrary to the impression advanced by the defendant, it was that aspect of the case which was critical in *Williams, supra,* and not merely the bald refusal to name the supplier.

All three of the above cited decisions were based on holdings that it was a denial of a defendant's fifth

[5] *See also: Rosado v. State,* 70 Wis.2d 280, 234 N.W.2d 69 (1975); *Jung v. State,* 32 Wis.2d 541, 145 N.W.2d 684 (1966); *State v. Tuttle,* 21 Wis.2d 147, 124 N.W.2d 9 (1963).

amendment rights, and consequently an abuse of discretion for the trial court on sentencing to consider a defendant's refusal to confess guilt. This court in *Scales, supra,* 496, *citing Thomas, supra,* expressed the rationale for the decision:

"The court in *Thomas* vacated the sentence and remanded for resentencing because, when the defendant remained silent, '[H]e paid a judicially imposed penalty for exercising his constitutionally guaranteed rights.' (P. 946) *Thomas* held that, when the defendant was given the opportunity for allocution following the finding of guilty, the right of appeal remained open to him, and the court, citing numerous United States Supreme Court cases, stated, '[A]ppeal is . . . an integral part of the trial system for finally adjudicating the guilt or innocence of a defendant.' (P. 945) *Thomas* held that a defendant, even after conviction, could not be compelled to pay a price for the retention of his fifth amendment rights. In the instant case, Scales was obliged to pay that price."

Under the circumstances presented in this case, there is no fifth amendment violation. The trial court was not attempting to get the defendant to admit his guilt, either by direct admission or circumspectly by getting the defendant to name his accomplices. The defendant had already waived any fifth amendment rights by pleading guilty and thus admitting his participation in the armed robbery. Thus when the trial court asked the defendant to reveal the names of the accomplices to the very crime for which the defendant had pleaded guilty, the trial court was not asking the defendant to incriminate himself, but rather to incriminate others. No constitutional right was infringed upon.

In *State v. Tew,* 54 Wis.2d 361, 368, 195 N.W.2d 615 (1972), this court recognized that a defendant's remorse, repentance and cooperativeness might be considered by a trial court in sentencing. *See also: McCleary v. State,*

49 Wis.2d 263, 182 N.W.2d 512 (1971), and *Finger v. State,* 40 Wis.2d 103, 161 N.W.2d 272 (1968). While matters surrounding the establishment of remorse and repentance are subject to the limitations set forth in *Scales, supra* (see also *Gregory v. State,* 63 Wis.2d 754, 218 N.W.2d 319 (1974)) those limitations do not necessarily apply to matters of cooperativeness. It was entirely proper for the trial court to consider on sentencing, the defendant's cooperativeness as manifested by his refusal to name his accomplices. The consideration of that factor did not constitute an abuse of discretion.

The defendant's contention that the sentence was unduly harsh is advanced without any support therefor. The record reveals that the trial court considered the proper *McCleary, supra,* factors of: Gravity of the offense, character of the offender, and the need for public protection. The trial court noted especially the seriousness of the attempted murder charge, stating that had the defendant been a better shot there would have been a death involved. The trial court noted that the defendant had an adult criminal record and was, in fact, on parole for a 1970 armed robbery conviction when he committed the crimes here involved.

The defendant faced a maximum possible term of imprisonment of 60 years for the crimes of which he was convicted. He received a total of 40 years. The sentence was well within the limits of the statutory maximum. The record reflects that the trial court properly exercised its discretion in arriving at the sentence. Although a lengthy sentence was imposed, the record reflects a rational basis for imposing such sentence.

*By the Court.*—Judgments and order affirmed.