STATE of Wisconsin, Plaintiff-Respondent,

v.

James R. GUSTAFSON, Defendant-Appellant.†

Court of Appeals

No. 81–2015–CR. *Submitted on briefs September 2, 1982.—*
*Decided March 25, 1983.*
(Also reported in 332 N.W.2d 848.)

For the defendant-appellant the cause was submitted

on the brief of *Louis B. Butler, Jr.*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Stephen W. Kleinmaier,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J. In this case, submission of proof of at least two and possibly four separate offenses supported a single count of sexual assault. This created a potential deprivation of defendant's right to a unanimous jury verdict. It was error, therefore, not to give a curative instruction, *sua sponte.* We hold, however, that the error was harmless under the facts of this case. We also decide the other issues raised on appeal against the defendant and affirm the verdict.

Before reciting the facts, it must be pointed out that our decision focuses, at length, upon *State v. Eisch,* 96 Wis. 2d 25, 291 N.W.2d 800 (1980), and *Harrell v. State,* 88 Wis. 2d 546, 277 N.W.2d 462 (Ct. App 1979). We feel compelled to cite these cases at the outset because it is our belief that these cases have created a dilemma for prosecutors and trial judges that must be addressed and a solution suggested.

On October 10, 1980, two fourteen-year-old girls, B.J.G. and C.L.Y. were walking towards downtown Manitowoc when they came upon R.J.G., a boy of approximately the same age, who was standing by a car. The girls knew R.J.G. from school. They soon found out that R.J.G. was waiting for his father to get off the telephone. They asked him if his father would buy them some beer or peppermint schnapps. R.J.G. said he would ask. When his father, James Gustafson, got off the telephone, R.J.G. asked him if he would buy the schnapps or beer. Gustafson replied in the affirmative, and the girls got into the car. Beer and schnapps were bought, mostly with

B.J.G.'s money. The girls then suggested a place to drink it. Gustafson went to the secluded area designated by the girls. There, the girls consumed most of the schnapps and got drunk.

Upon returning from the secluded area, the girls started to feel sick, and Gustafson took them to his apartment. The girls immediately retired to the bathroom to deal with their sickness. After about ten minutes, Gustafson entered the bathroom and led B.J.G. out to the living room, while R.J.G. joined C.L.Y. in the bathroom, uninvited. B.J.G. fell asleep on the couch but was awakened upon becoming aware that Gustafson was pulling up her sweater. Gustafson succeeded in unhooking B.J.G.'s bra, squeezing her breasts and feeling them with his hands. He then succeeded in sucking her breasts despite her protestations. She was able to get him to stop with the statement that she had to use the bathroom again.

B.J.G. stayed in the bathroom for about ten minutes with C.L.Y. who had been fighting off R.J.G. Then Gustafson came and led her to the couch again, where she fell asleep once more. She was awakened when Gustafson, for the second time, assaulted her. He pulled up her sweater and felt her breasts as before. This time, however, he went further and unzipped her pants and placed his hand on her pubic area. B.J.G. then started hitting Gustafson and succeeded in running out of the apartment and across the street, where she hid in some bushes and fell asleep. Police were soon informed that a young girl was drunk at that spot and picked her up.

Meanwhile, C.L.Y. learned that B.J.G. had left the premises, and C.L.Y. demanded that Gustafson take her home. He did, but not before stopping his car, pulling her over to him, going under her shirt and touching her breasts with his hand. C.L.Y. fought him off, and Gustafson then drove her close to her home where he let her go.

The district attorney charged Gustafson with two counts of second-degree sexual assault, contrary to sec. 940.225(2)(e), Stats. One count was the sexual assault of B.J.G., and the other count was the sexual assault of C.L.Y. The state's evidence concerning the assault of C.L.Y. showed only one possible sexual assault. Therefore, that conviction is not central to the discussion of the major issue. It is the assault of B.J.G. that causes the concern.

After testimony was closed, the trial court issued, *inter alia,* the following instruction regarding the proof required as to the alleged assault on B.J.G.:

The first element requires that the defendant have sexual contact with [B.J.G.]. Sexual contact is any intentional touching of the breasts or pubic area, clothed or unclothed, of [B.J.G.] with the defendant's hand or the defendant's mouth.

Gustafson contends this instruction denied him the right to a unanimous verdict as established in *Holland v. State,* 91 Wis. 2d 134, 138, 280 N.W.2d 288, 290 (1979).

A preliminary issue, posited by the state, is whether the defendant waived consideration of the issue by not objecting at trial. The issue has no merit. In *State v. Baldwin,* 101 Wis. 2d 441, 446, 304 N.W.2d 742, 746 (1981), our supreme court held:

The defendant's challenge to the disjunctive jury instruction raises state and federal constitutional questions relative to the state's burden of proof beyond a reasonable doubt and the defendant's right to a unanimous verdict. These matters go directly to the integrity of the fact finding process, and the defendant's failure to object at trial should not preclude him from raising them on appeal. [Footnote omitted.]

In order to determine whether there is a potential problem with the trial court's failure to require unanimity regarding the separate acts involved in the assault of B.J.G., this court must determine whether the evidence

adduced shows that the defendant committed one or more than one separate and complete sexual assault. The criteria for determining when a course of conduct involves more than one separate and distinct sexual assault were set forth by our supreme court in *State v. Eisch.* They were also discussed in *Harrell v. State,* cited with approval in *Eisch.* We are bound by the decisions in *Eisch* and *Harrell.*

Reading *Eisch* and *Harrell* meticulously, one would have to conclude under the facts of this case that B.J.G. was the victim of not one but two or more assaults. Thus, we are faced with the problem of duplicity, which is the joining in a single count of two or more distinct and separate offenses. *Harrell,* 88 Wis. 2d at 555, 277 N.W.2d at 465.

*Harrell* reaffirms that when different crimes are committed, each may be prosecuted separately although all form part of one transaction or sequence of events. Crimes are different when the evidence necessary to establish one differs from the other. *Id.* In Wisconsin, a primary test to be used is the "additional fact" test which examines "whether each count requires proof of an additional fact which the other count or counts do not." *State v. Rabe,* 96 Wis. 2d 48, 63, 291 N.W.2d 809, 816 (1980).

As applied to sexual assault cases according to both *Harrell* and *Eisch,* the allegation of substitute facts, all of which furnish the same legal element of the crime, does not result in multiplicitous charges if these facts are either separated in time or are of a significantly different nature in fact. *Eisch,* 96 Wis. 2d at 31, 291 N.W.2d at 803. These different facts are shown when the offender has perpetrated separate volitional acts. In *Harrell,* the offender raped the victim, paused for awhile, then

raped her again. The *Harrell* court concluded the defendant formed the intent to again assault the victim and again applied the force necessary to accomplish his purpose and thereupon completed a separate and distinct crime. In *Eisch*, the defendant did all of his assaulting within a continuous time frame but committed separate volitional acts: intercourse, anal intercourse, fellatio, and insertion of a foreign object into the victim's vagina. The *Eisch* court held that each act constituted a separate crime because each act:

separately resulted in injury, pain, danger, fear and humiliation to the victim. It can hardly be said that the assaultive acts allegedly committed by the defendant were so similar in nature that they merged one into the other so as to be treated as but one offense. Each was perpetrated by the exercise of separate volitional acts, each involved a different area of the victim's body, each required separate application of force and threat, and each resulted in a new and different humiliation, danger and pain.

*Eisch*, 96 Wis. 2d at 37, 291 N.W.2d at 806.

The facts in *Harrell* and *Eisch* both require a finding here that there were at least two separate assaults committed against B.J.G. B.J.G. was assaulted by Gustafson when he squeezed her breasts with his hands and sucked them with his mouth. She got away and ten minutes passed before he led her back to the couch and assaulted her again. This time not only did he feel her breasts, but he also placed his hand down her pants and into her pubic area.

The *Harrell* court identified seven factors to determine whether the accused had come to a "fork in the road and nevertheless decide[d] to invade a different interest [so that] his successive intentions ma[d]e him subject to cumulative punishment." *Harrell*, 88 Wis. 2d at 558, 277 N.W.2d at 466, quoting Judge Leventhal's concurrence in

*Irby v. United States,* 390 F.2d 432, 437–38 (D.C. Cir 1967).

The seven factors as applied to this case are:

(1) *Nature of the Act.* The kind and character of the acts were different. In the first attack, Gustafson squeezed her breasts with his hands. Then, he sucked her breasts. Both hurt her. In the second attack, he again felt her breasts and also placed his hand inside her pants, penetrating to her pubic area. The squeezing and the sucking are separate volitional acts which induced additional fear, pain and humiliation and were not so similar in nature as to merge into one another. Likewise, the touching of the breasts and then the pubic area are also separate volitional acts. To say otherwise, pursuant to a strict reading of *Eisch,* would be dishonest.

(2) *Time.* The second attack occurred at least ten minutes after the first one, and one may infer from the record that the interval might have been even longer. When B.J.G. was able to leave the couch, Gustafson had time to think it over. He had come to his "fork in the road" and did not have to commence a new humiliation upon the victim, but he did.

(3) *Place.* Although the assaults both occurred on the couch, the victim was in the bathroom in the interim. The defendant moved the victim back to the couch. This movement back to the location of the couch tends to lend credence to the establishment of separate acts.

(4) *Intent.* The lapse of time, according to the *Harrell* opinion, can further shed light on the offender's intent. The conduct here was "interrupted" and illustrates, in the *Harrell* court's words, the "formed intent of the defendant to gratify himself or abuse his victim by a second act . . . ." *Harrell,* 88 Wis. 2d at 574, 277 N.W. 2d at 473.

(5) *Cumulative Punishment.* Each act of the defendant, *i.e.,* touching the breasts, sucking the breasts, placing of the hands on the pubic area, is, according to the *Eisch* interpretation of legislative intent, a separately chargeable offense. Perhaps the *Eisch* case means that Gustafson should be charged with not two, but four, separate counts for violation of B.J.G. After all, the squeezing of the breasts so that they hurt B.J.G. and the painful sucking are not "trivial" differences. *See Eisch,* 96 Wis. 2d at 39, 291 N.W.2d at 807. Each constitutes a further denigration of the victim's integrity. Too, legislative history and commen sense must, if one reads the *Eisch* opinion strictly, lead to the conclusion that these acts may be charged separately. The same must be said of the second act which involved a touching of the breasts and touching of the pubic area.

(6) *Muscular Contraction.* This factor, suggested by *Harrell,* is illustrated as being like successfully pulling the trigger of a gun and firing several shots. If taken literally, in general medical terminology, Gustafson's actions constituted multiple acts. When Gustafson's hands and face moved from one area of B.J.G. to another, muscular contractions occurred.

(7) *Number of Victims.* Obviously, multiple victims result in multiple offenses. Here, Gustafson was charged with a separate sexual assault against both girls. Beyond that, this factor is of no concern.

Analyzing this case in terms of the above criteria, there can be no logical conclusion other than that, according to *Eisch* and *Harrell,* Gustafson should have stood accused of two, three or four counts of sexual assault against B.J.G.

Herein lies the problem both prosecutors and trial judges face as a result of the *Eisch/Harrell* criteria. Where multiple acts are committed by a defendant, how many counts does a prosecutor charge? Where the evi-

dence shows more acts (and potentially more separate crimes) than are charged, what does a trial judge do when instructing the jury?

Neither of the questions is answered by *Eisch* and *Harrell*. The criteria in *Eisch* and *Harrell* are subject to wide and varying interpretations and can be used or abused. The separation in time in this case reasonably supports two separate charges. In other cases, the time element may not be so clear. Splitting this case into four counts may be excessive, even though arguably supported by *Eisch* and *Harrell*.

The problems a prosecutor and a trial judge face, under these circumstances, are not insubstantial. If a prosecutor charges numerous separate counts, there may be double jeopardy or multiplicity problems if he or she guesses on too many. If a prosecutor charges conservatively and guesses wrong, unless the jury is instructed on unanimity for each separate act, there may be a unanimity problem.

While prosecutors have wide prosecutorial discretion in charging a defendant, there is a point where multiple charges for a single course of conduct, albeit involving multiple touchings of different parts of the body, could violate the legislative intent, be unduly harsh on some defendants, and amount to a double jeopardy violation. Prosecutors should be forewarned against splitting a course of conduct into multiple counts simply because a different area of the body was touched. Likewise, prosecutors and trial judges should recognize the problems which arise when the proof shows more acts, and arguably more separate crimes, than are charged.

Because of the potential multiplicity and double jeopardy problems that can arise if the *Eisch/Harrell* criteria are applied too literally and crimes are split in a manner in excess of reason, when in doubt, a prosecutor should read *Eisch* and *Harrell* conservatively. He or she should

charge, in separate counts, only as many crimes as are reasonable and necessary so that the potential punishment for all counts charged fits the gravity of the course of conduct alleged to have been committed. This may very well mean that in some cases the evidence will show more acts and potential separate crimes than are charged. Where this occurs, the jury should be instructed on how to deal with the evidence to avoid a possible violation of the defendant's right to a unanimous verdict. After defining the elements of the offense, the court should give an instruction in substantially the following form:

The case is a criminal case. Your verdict must therefore be a unanimous verdict. A unanimous verdict means that all twelve of you must find each element of the offense proven beyond a reasonable doubt. In this case there is proof that the defendant may have engaged in more than one act which might constitute a crime. Before you may find the defendant guilty of the offense charged, you must unanimously agree on the specific act the defendant committed. You may not find the defendant guilty if some of you agree he committed one of the acts, but not the other, while the rest of you agree he committed the other act.

By so instructing the jury, the defendant's right to a unanimous verdict will be protected.[1]

---

[1] Any argument that a trial court's general instruction on unanimous verdict would be sufficient to cure the duplicity problem would be contrary to established case law. The general instruction reads as follows:

[B]efore the jury can return a verdict which can legally be received, such verdict must be reached unanimously. In a criminal case all twelve jurors must agree in order to arrive at a verdict.

Wis J I—Criminal 515. The supreme court has already held that each volitional act is a separate harm to the victim. *Actus reus* has been used to describe the harm to the victim and society as well as the act itself. *Wray v. State*, 87 Wis. 2d 367, 372, 275 N.W.2d 731, 734 (Ct. App. 1978). Each harm is a specific and separate conceptual act, or *actus reus* act. Wisconsin case law

No unanimity instruction was given in this case, even though there were at least two separate assaults. Without viewing any of the facts of this particular case and looking at the facts in the abstract, any time there are two or more separate crimes combined in a single count, it is conceivable that a jury could split on which of the crimes a defendant committed. Therefore, the trial judge should have instructed the jury on the requirement of unanimity.

After reviewing the facts in this case, however, we cannot find that the unanimity problem could have been any more than an abstract issue. The defendant testified that after picking up the two girls, they drove to his apartment to get some cigarettes. He went into his apartment and got the cigarettes while the girls remained in the car. He then drove them downtown and dropped them off at their request. He denied touching either of the girls anywhere at any time. Had there been evidence that Gustafson admitted touching B.J.G. at one or two times in question but claimed to have done so in an innocent manner, there would be no harmless error. Additionally, if B.J.G.'s testimony had been inconsistent so as to lead a reasonable juror to believe that one of the events might have happened but not the other, there would also be a question. Further, if the physical evidence were to differ from the testimony adduced, similar problems might arise. The record discloses no such problems.

The jury was faced with the credibility of B.J.G. versus the credibility of the defendant. If the jury be-

demands that juries be unanimous as to each separate conceptual act that the law prohibits. *Holland v. State,* 91 Wis. 2d 134, 139, 280 N.W.2d 288, 291 (1979). The general instruction does not inform the jury that it must be unanimous regarding each specific volitional act (separate crime). To accept such an argument would be to allow guilt even though there may be disagreement within the jury as to which volitional act was committed. We are bound by *Holland, Wray* and footnote 5 in *Eisch.*

lieved B.J.G., the defendant was guilty of all of the acts. If the jury believed the defendant, he was not guilty of any offense. There is no way the jury could have found from the evidence that the defendant committed the first set of assaults but not the second or vice versa. By the unanimous verdict of guilty, the jury found the defendant guilty of *all* the assaults. The prosecutor's decision to charge the defendant with only one count of sexual assault in this case deprived Gustafson of no right and, in fact, inured to his benefit. Any error in this case was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18 (1967).

Two other issues were raised by the public defender on behalf of the defendant, and the defendant raises numerous issues on his own, *pro se.* We first deal with the two issues raised by the public defender on behalf of the defendant.

It is claimed that allowing testimony from Gustafson's minor son concerning the son's plea of no contest in juvenile court denied Gustafson his right to due process. R.J.G. had been called as a witness on Gustafson's behalf. During cross-examination, R.J.G. was asked if he had pled no contest in a juvenile proceeding arising out of the same incident. He was also asked if he understood that his plea was essentially in admission of guilt. The questions were asked to impeach R.J.G.'s direct examination testimony that he had not sexually assaulted either girl. Gustafson's counsel initially objected to this line of questioning but soon acquiesced. The state argues waiver, and we agree.

A specific objection is required to challenge an error on appeal. *Holmes v. State,* 76 Wis. 2d 259, 271, 251 N.W.2d 56, 62 (1977). There was no specific objection. The defendant claims, however, that this was plain error, and, therefore, the waiver argument cannot be successful. We hold there was no plain error.

■

Plain error has been defined as that error which seriously affects the substantial rights of the accused. *Virgil v. State,* 84 Wis. 2d 166, 192–93, 267 N.W.2d 852, 865 (1978). It is that kind of error which permits the trial to proceed in violation of a fundamental condition necessary for a fair trial. *Id.* at 193, 267 N.W.2d at 865.

It is true that the law prohibits use of prior dispositions by the juvenile. This policy is echoed in our state's evidence code. Section 906.09, Stats., deals with impeachment by evidence of conviction of a crime. Section 906.09 (4) specifically states that evidence of juvenile adjudications is not admissible under this rule. It is argued, therefore, that when the legislature affirmatively compels a certain courtroom procedure, failure to follow it is plain error.

Observation of the facts in this case, however, shows the argument to be misplaced. Although the legislature has forbidden the use of prior juvenile adjudications in subsequent court proceedings, no prior adjudication was used here. R.J.G. was not asked about a juvenile adjudication. Rather, he was asked about his plea.

■

The contrast between a plea and an adjudication is a distinction with a difference. The purpose of sec. 906.09 (4), Stats., is to prevent what is akin to a prior juvenile "conviction" from being used in a subsequent court proceeding. The tender of a plea, however, denotes an admission by the juvenile, which takes place prior to actual adjudication. As an admission, it does not come under sec. 906.09 dealing with impeachment by *evidence of conviction of a crime.* Instead, it comes under sec. 906.13, Stats., concerning prior *statements* of witnesses. Section 906.13 allows extrinsic evidence of a prior inconsistent statement of a witness. Here, R.J.G. testified

·that he did not assault either girl. His admission of guilt at a prior juvenile proceeding is inconsistent with his direct examination testimony. Thus, the prosecution's purpose in presenting the juvenile's plea is only to cast doubt upon the credibility of his in-court statement. The purpose is not to infer an atmosphere of dishonesty in the witness' nature which may be inferred by proof of commission of a previous crime. We conclude, therefore, that no emasculation of procedural mandate took place here, and no plain error occurred.

The other issue is whether Gustafson's statement to the police following the incident, in which he admitted that he had been with the girls and bought them liquor but denied sexual involvement, was involuntary. We note that originally the trial court's findings on this issue were not satisfactory. We remanded to the trial court which issued findings of fact. *See State v. Drogsvold,* 104 Wis. 2d 247, 276, 311 N.W.2d 243, 257 (Ct. App. 1981). The findings are not against the great weight and clear preponderance of the evidence.

Gustafson's *pro se* arguments, twenty in number, are comprised of twenty conclusory sentences with no supporting legal authority. We have thoroughly reviewed the record and find all twenty issues to be without merit.

*By the Court.*—Judgment affirmed.

VOSS, P.J. (concurring in part and *dissenting* in part). I agree with the majority that Gustafson's conviction on the second-degree sexual assault involving C.L.Y. should be affirmed. I also agree that the trial court erred in failing to give an instruction on unanimity in the B.J.G. case. I cannot, however, agree that the trial court's error was harmless.

The Fourteenth Amendment of the United States Constitution guarantees all persons a right to a fair trial. Inherent in this guarantee is the right to a unanimous jury verdict and the due process requirement that the prosecution prove each essential element of the offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364 (1970).

I acknowledge that some errors of constitutional dimension are subject to the harmless error doctrine, *State v. Sharlow,* 106 Wis. 2d 440, 448, 317 N.W.2d 150, 154 (Ct. App. 1982). However, this court has stated that:

> We may find a federal constitutional error to be harmless only if we are "able to declare a belief that it was harmless beyond a reasonable doubt." . . . In order to declare such a belief, we must find that there is no "reasonable possibility" that the error "might have contributed to the conviction." [Citations omitted.]

*State v. Feela,* 101 Wis. 2d 249, 269, 304 N.W.2d 152, 162 (Ct. App. 1981). After reviewing the record, I cannot conclude that the trial court's failure to instruct the jury on unanimity was harmless error because I believe there is a strong possibility that the omission deprived Gustafson of his fundamental right to a unanimous jury verdict.

The jury received improper instructions. Since the trial court used the disjunctive mode in instructing the jury, the jury may not have understood what they actually had to agree on to find that Gustafson had sexually assaulted B.J.G. On appeal, this court has no way of knowing what happened during the jury's deliberation. Thus, we can only speculate on whether the jury properly convicted Gustafson. Since the right to be properly tried by one's peers is an important and fundamental safeguard in our legal process, I am very reluctant to

engage in such speculation. Therefore, because I cannot say what took place in the jury room, I cannot declare that there is *no* reasonable possibility that the error might have contributed to the conviction.